1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF TENNESSEE
2                    GREENEVILLE

3   UNITED STATES OF AMERICA,   .  DOCKET NO. CR-2-14-46

4                                .

5        GOVERNMENT,             .

6                                .

          VS.                    .  GREENEVILLE, TN
7                                .  OCTOBER 27, 2015
    MAXWELL SUERO,               .  2:00 P.M.
8                                .

         DEFENDANT.              .
9
    .  .  .  .  .  .  .  .  .  .  .

10

11

12         TRANSCRIPT OF SENTENCING PROCEEDINGS
           BEFORE THE HONORABLE J. RONNIE GREER
13              UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16   FOR THE GOVERNMENT:     U.S. DEPARTMENT OF JUSTICE
                             OFFICE OF U.S. ATTORNEY
17                           J. GREGORY BOWMAN, AUSA
                             220 WEST DEPOT STREET, SUITE 423
18                           GREENEVILLE, TN 37743

19   FOR THE DEFENDANT:      WAYNE R. STAMBAUGH,
                             ATTORNEY AT LAW
20                           P.O. BOX 1896
                             MORRISTOWN, TN 37816

21

22

23
     COURT REPORTER:         KAREN J. BRADLEY
24                           RPR-RMR
                             U.S. COURTHOUSE
25                           220 WEST DEPOT STREET
                             GREENEVILLE, TN 37743

1  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
2  PRODUCED BY COMPUTER.

3       (CALL TO ORDER OF THE COURT AT 2:00 P.M.)

4            THE COURT:  ALL RIGHT.  MS. HOPSON, WILL YOU

5  CALL THE NEXT CASE, PLEASE.

6            THE CLERK:  USA VERSUS MAXWELL SUERO, CASE

7  NUMBER CR-2-14-46.

8            THE COURT:  ALL RIGHT.  THE DEFENDANT IS BEFORE

9  THE COURT THIS AFTERNOON FOR SENTENCING IN THIS CASE.  HE

10  HAS BEEN CONVICTED ON A CHARGE OF CONSPIRACY TO DISTRIBUTE

11  28 GRAMS OR MORE OF COCAINE BASE.  A PRESENTENCE REPORT

12  WAS ORDERED AND PREPARED.  THE REPORT WAS DISCLOSED TO THE

13  DEFENDANT ON AUGUST 7, 2015.  IN THE PRESENTENCE REPORT

14  THE PROBATION OFFICER, I GUESS -- ACTUALLY IN THE

15  PRESENTENCE REPORT AND THE ADDENDUM THE PROBATION OFFICER

16  CALCULATES AN ADVISORY GUIDELINE RANGE OF 70 TO 87 MONTHS

17  BASED ON A TOTAL OFFENSE LEVEL OF 25 AND A CRIMINAL

18  HISTORY CATEGORY OF 2.  BY STATUTE MR. SUERO FACES A

19  MANDATORY MINIMUM TERM OF 5 YEARS UP TO A MAXIMUM TERM OF

20  40.  THERE IS STILL ONE PENDING OBJECTION TO THE

21  PRESENTENCE REPORT.

22            MR. STAMBAUGH, HAVE YOU RECEIVED AND READ A

23  COPY OF THIS PRESENTENCE REPORT?

24            MR. STAMBAUGH:  I HAVE, YOUR HONOR.

25            THE COURT:  AND HAVE YOU REVIEWED IT AND

1   DISCUSSED IT WITH MR. SUERO?

2           MR. STAMBAUGH:  I HAVE, YOUR HONOR, AND WE ALSO

3   WENT OVER THE ADDENDUMS AS WELL --

4           THE COURT:  ALL RIGHT.

5           MR. STAMBAUGH:  -- AND WHAT WE WOULD BE DOING

6   THIS AFTERNOON.

7           THE COURT:  ALL RIGHT.  THANK YOU.

8           MR. SUERO, HAVE YOU RECEIVED AND READ A COPY OF

9   THE PRESENTENCE REPORT PREPARED IN THIS CASE?

10          THE DEFENDANT:  YES.

11          THE COURT:  AND HAVE YOU REVIEWED THAT REPORT

12  AND DISCUSSED IT FULLY WITH YOUR ATTORNEY?

13          THE DEFENDANT:  YES.

14          THE COURT:  HAVE YOU HAD SUFFICIENT TIME TO

15  REVIEW THE PRESENTENCE REPORT WITH YOUR ATTORNEY?

16          THE DEFENDANT:  YES.

17          THE COURT:  ALL RIGHT.  MR. STAMBAUGH, WHERE DO

18  WE STAND ON THIS REMAINING OBJECTION, THAT IS THE

19  OBJECTION TO THE CRIMINAL HISTORY POINTS ASSESSED IN

20  PARAGRAPH 37?

21          MR. STAMBAUGH:  YES, YOUR HONOR; AND, AGAIN, WE

22  RECEIVED THIS ADDENDUM LATE LAST WEEK, AND I'VE ALREADY

23  DISCUSSED IT WITH MY CLIENT AT THAT POINT THAT I LET HIM

24  KNOW WHAT I BELIEVE THE PROBATION OFFICE WOULD COME BACK

25  WITH REGARDING THIS PARTICULAR ISSUE OF HIS STATUS OF

1    YOUTHFUL OFFENDER.  I'VE GONE OVER THAT, AND I'VE ALSO

2    LOOKED AT THE -- AND THEY PROVIDED A COPY OF THE CASE OF

3    UNITED STATES VERSUS, I BELIEVE IT'S LASANE.

4           THE COURT:  AND I MISSPOKE, IT'S PARAGRAPH 34;

5    ISN'T IT?

6           MR. BOWMAN:  YES, YOUR HONOR.

7           MR. STAMBAUGH:  THAT'S CORRECT, YOUR HONOR.

8           AND THAT GOES INTO THIS CONVICTION WHICH

9    HAPPENED IN, I GUESS WE'LL CALL IT SUPERIOR COURT OF

10    BRONX, NEW YORK.  THEY PROVIDED, AGAIN, AND IT WAS A

11    SECOND DOCUMENT.  IT'S NOT A JUDGMENT.  WE DON'T HAVE A

12    JUDGMENT IN THIS CASE.  WE DON'T HAVE A JUDGMENT, ALL WE

13    HAVE IS THE NCIC; AND THEN WE HAVE A COMPUTER-GENERATED

14    DOCUMENT THAT WAS SENT TO ME THAT STATES -- I DON'T KNOW,

15    I HOPE THIS WAS SENT TO THE GOVERNMENT AS WELL.  ON PAGE 8

16    OF 14, IT SAYS, CYCLE ONE, VIOLENT FELONY OFFENSE, YOUTH-

17    FUL OFFENDER, AND THEN UNDERNEATH THAT JUVENILE OFFENDER;

18    AND I DON'T KNOW IF THE COURT HAS THAT DOCUMENT OR NOT.

19           THE COURT:  I DO NOT, AT LEAST I DON'T HAVE IT

20    HERE.  I DON'T RECALL SEEING IT.

21           MR. STAMBAUGH:  THIS IS JUST SOMETHING THAT WAS

22    PROVIDED FROM THE PROBATION OFFICE.  AND IT ALSO GOES ON

23    ON PAGE 11 OF 14, BASICALLY SAYS THAT IT IS SEALED.  THIS

24    IS SOMETHING THEY RECEIVED FROM NEW YORK.  I KNOW THAT

25    THEY WERE UNSUCCESSFUL OF GETTING ANY TYPE OF CERTIFIED

1    JUDGMENT, AS I WAS UNSUCCESSFUL ON GETTING ANY TYPE OF

2    JUDGMENT FROM NEW YORK.

3                I'M GOING TO SOMEWHAT SPEAK DIRECTLY TO THIS

4    LASANE CASE AND THEN EXPLAIN WHY I BELIEVE IT IS DIFFERENT

5    THAN WHAT WE HAVE HERE.  ONE, AGAIN, WE DON'T HAVE A COPY

6    OF THE JUDGMENT.  WE DON'T HAVE A CERTIFIED COPY, MUCH

7    LESS A COPY OF ANY KIND SHOWING EXACTLY WHAT HAPPENED.

8    LASANE, IT WAS A DIFFERENT TYPE OF SITUATION, IN THAT THEY

9    DID HAVE PROOF OF SOME SORT THAT HE WAS ADJUDICATED AS A

10   YOUTHFUL OFFENDER; AND THEN FROM WHAT I UNDERSTAND, HE WAS

11   ACTUALLY SENT TO AN ADULT CORRECTIONAL FACILITY, AND

12   THAT'S SOMETHING THAT THE COURT LOOKED AT IN MAKING THAT

13   DETERMINATION.

14               WE DON'T HAVE ANY PROOF OF THAT HERE.  WE DON'T

15   HAVE ANY PROOF OF WHERE HE ACTUALLY SERVED HIS TIME OR THE

16   FACT OF THE MATTER IS WHETHER HE WAS TRULY A JUVENILE OR

17   NOT.  THE FACT OF THE MATTER THAT THE RECORD WAS ACTUALLY,

18   CONTINUES TO BE SEALED, I THINK, IS COMPELLING.

19               THIS WAS A PLEA OF GUILTY, THIS WAS NOT A

20   TRIAL, AND HE DID PLEAD GUILTY; AND I JUST THINK WE'RE

21   STILL IN THE SAME SITUATION OF NOT REALLY HAVING THE

22   INFORMATION IN FRONT OF US BECAUSE THE COURT IN NEW YORK

23   WILL NOT PROVIDE US THE INFORMATION; AND, AGAIN, THAT WAS

24   JUST PROVIDED TO ME BY THE PROBATION OFFICE.

25               I DO SEE IN THE ONE DOCUMENT IT SAYS UNDERNEATH

1  YOUTHFUL OFFENDER, IT SAYS JUVENILE OFFENDER.  I DON'T
2  KNOW WHAT TO MAKE OF THAT.
3            ALL I KNOW IS WE DON'T HAVE A COPY OF A JUDG-
4  MENT WHICH STATES WHETHER HE PLED GUILTY AS A MINOR OR HE
5  PLED GUILTY AS AN ADULT.  WE DON'T HAVE ANY PROOF ALSO OF
6  HOW HE DID HIS TIME.  I THINK THOSE ARE FACTORS THE COURT
7  NEEDS TO LOOK TOWARDS IN MAKING ITS DETERMINATION; AND
8  IT'S A DIFFICULT ONE BECAUSE IT'S MY UNDERSTANDING THAT --
9  OF COURSE, IT'S -- WHEN THIS REQUEST WAS MADE TO NEW YORK,
10 IT WAS DONE, BY MY UNDERSTANDING, OF A COURT ORDER TO
11 PROVIDE THESE DOCUMENTS, OR THEY UNDERSTOOD THESE WERE
12 BEING PROVIDED TO THIS FEDERAL COURT'S JURISDICTION; AND
13 HE STILL REFUSED TO DO THAT, WHICH PUTS MY CLIENT IN QUITE
14 AN AWKWARD POSITION BECAUSE THERE'S NO WAY FOR HIM TO --
15 OTHER THAN HIS OWN TESTIMONY, AND HE CAN TESTIFY IN A FEW
16 MOMENTS ABOUT HOW HE WAS CONVICTED, HOW HE PLED GUILTY,
17 WHERE HE SERVED HIS TIME; BUT OTHER THAN THAT WE JUST
18 DON'T HAVE ANY PROOF OF WHETHER HE WAS A YOUTHFUL OFFENDER
19 OR WHETHER HE WAS TRULY A JUVENILE OFFENDER.  I'M NOT
20 GOING TO ARGUE WITH THE CASE --
21            THE COURT:  DOESN'T THE BRONX COUNTY SUPREME
22 COURT HAVE JUVENILE JURISDICTION?  I UNDERSTOOD THAT WAS
23 THE TRIAL COURT OF RECORD.
24            MR. STAMBAUGH:  I BELIEVE THAT'S WHAT IS STATED
25 IN THE CASE, IT GOES INTO THAT, BECAUSE IT DEALS WITH A

1  CASE DIRECTLY FROM THAT COURT; BUT IF IT WAS A COURT OF

2  RECORD, I'M NOT SURE, AGAIN, HOW IT COULD BE A SEALED

3  CASE.  IF HE WAS TRIED AS AN ADULT, THEN IT WOULD BE

4  CONSIDERED AN ADULT FILE, AND WE SHOULD BE ABLE TO HAVE A

5  COPY OF THE JUDGMENT HERE, WHICH WE DON'T HAVE.

6          THE COURT:  WHAT WE HAVE IS AN NCIC REPORT THAT

7  INDICATES THAT HE WAS CONVICTED OF THOSE OFFENSES IN THE

8  BRONX COUNTY SUPREME COURT; CORRECT?

9          MR. STAMBAUGH:  THAT'S CORRECT, YOUR HONOR,

10 THAT'S WHAT WE HAVE.

11         THE COURT:  I DON'T KNOW OF ANYTHING THAT

12 REQUIRES THE GOVERNMENT TO PRODUCE THE JUDGMENT; DO YOU?

13         MR. STAMBAUGH:  WELL, GIVEN THE BURDEN OF PROOF

14 IN THESE SENTENCING HEARINGS, YOUR HONOR, I'M NOT SURE

15 THAT THEY'RE REQUIRED TO DO SO.  IT'S AN UNUSUAL SET OF

16 CIRCUMSTANCES BECAUSE IF WE WERE IN ANOTHER COURT, ANY

17 TYPE OF JUDGMENT, YOU'D HAVE TO HAVE A CERTIFIED COPY OF

18 THE JUDGMENT TO PROVE THAT IT ACTUALLY EXISTS, THAT IT'S

19 NOT JUST SOME SORT OF HEARSAY DOCUMENT THAT'S BEEN

20 PRODUCED, AND THAT'S WHAT --

21         THE COURT:  LET ME ASK YOU THIS, YOU SAID

22 MR. SUERO WAS WILLING TO TESTIFY WHAT HAPPENED, IS HE

23 WILLING TO TESTIFY UNDER OATH THAT HE WAS NOT CONVICTED OF

24 THESE OFFENSES IN THE BRONX COUNTY SUPREME COURT?

25         THE DEFENDANT:  YES.

1          THE COURT:  AT THE RISK OF BEING CHARGED WITH

2     PERJURY?

3          THE COURT:  YES.

4          MR. STAMBAUGH:  AND I'VE EXPLAINED TO HIM WHAT

5     COURT -- IT STATES WHAT COURT WE'RE IN.  THERE'S NO DOUBT

6     IT SHOWS IN THE DOCUMENTS THAT IT WAS IN THAT COURT.  WHAT

7     HE'S TELLING ME IS, HE'S SAYING HE DID NOT DO THIS AS A

8     YOUTHFUL OFFENDER, THAT HE WAS A JUVENILE.

9          I GUESS ONE OF THE COMPELLING QUESTIONS WOULD

10     BE IN THIS CASE IS WHERE DID HE DO HIS TIME.

11          THE COURT:  WHY DOES THAT MAKE A DIFFERENCE?

12          MR. STAMBAUGH:  BECAUSE IT SEEMS TO BE A FACTOR

13     THAT THE COURT LOOKED AT IN THE UNITED STATES VERSUS

14     LASANE OPINION.

15          THE COURT:  WELL, I THINK WHAT THEY LOOKED AT

16     WAS THAT IT, IN ADDITION TO ALL THE OTHER THINGS THEY

17     CITED, HE SERVED HIS SENTENCE IN AN ADULT PRISON.

18          MR. STAMBAUGH:  YOUR HONOR, IF I MAY HAVE ONE

19     MOMENT TO SPEAK TO MY CLIENT.

20          THE COURT:  PLEASE MAKE SURE THAT HE

21     UNDERSTANDS THAT --

22          MR. STAMBAUGH:  ABSOLUTELY, YOUR HONOR.

23          THE COURT:  NOT ONLY IS HE AT RISK FOR BEING

24     CHARGED WITH PERJURY, HE'S AT RISK OF BEING -- RECEIVING

25     AN ENHANCEMENT FOR OBSTRUCTION IN THIS CASE IF HE

1  TESTIFIES FALSELY.

2       (OFF-THE-RECORD DISCUSSION BETWEEN THE DEFENDANT AND

3  HIS ATTORNEY)

4          MR. STAMBAUGH:  WHAT MY CLIENT HAS TOLD ME,

5  YOUR HONOR, AND TO MAKE SURE WE'RE ABSOLUTELY CLEAR ABOUT

6  THIS, HE UNDERSTANDS THE SIGNIFICANCE OF THIS BECAUSE I'VE

7  EXPLAINED THIS TO HIM BEFORE, HE'S SAYING NOW THAT HE WAS,

8  PLED GUILTY AS A YOUTHFUL OFFENDER, BUT HE DID HIS TIME IN

9  A JUVENILE DETENTION CENTER.

10          THE COURT:  ALL RIGHT.

11          MR. STAMBAUGH:  AND I DO UNDERSTAND WHAT THAT

12  MEANS.  OF COURSE, I'VE DONE THE RESEARCH AS WELL IN THE

13  CASE MATTER.  IF IT IS THE FACT THAT HE DID PLEAD GUILTY

14  AS A YOUTHFUL OFFENDER, THAT MIGHT MAKE THIS A MOOT POINT.

15          THE COURT:  ALL RIGHT.  I DON'T THINK THAT MUCH

16  IS AT ISSUE HERE.  I DON'T KNOW THAT THE GOVERNMENT WILL

17  TAKE ISSUE WITH THE STATEMENT THAT HE SERVED IT IN A

18  JUVENILE FACILITY.  I GUESS THE QUESTION IS WHETHER THAT

19  IN FACT DISTINGUISHES THIS CASE FROM THE SECOND CIRCUIT'S

20  LASANE CASE.

21          OKAY.  GO AHEAD, MR. STAMBAUGH.  I'M SORRY.

22          MR. STAMBAUGH:  AND, AGAIN, YOUR HONOR, I MEAN,

23  IT'S WHAT -- HE'S MADE THE STATEMENT TO ME EARLIER, THAT

24  AGAIN, THAT -- AND, AGAIN, WE DO HAVE A YOUTHFUL OFFENDER

25  DESIGNATION IN THAT PARTICULAR COURT.  AGAIN, WHAT

1  TROUBLES ME IS THE FACT OF THE MATTER IS THAT THIS COURT

2  RECORD IS STILL SEALED, AND THE FACT THAT IT'S SEALED JUST

3  MAKES ME BELIEVE THAT HE WAS A JUVENILE AT THE TIME.

4          IT'S VERY DIFFICULT FOR US, ESPECIALLY SOMEONE

5  IN MY POSITION, I'M NOT LICENSED IN THE STATE OF NEW YORK,

6  I CAN ONLY READ AND REVIEW AND TRY TO UNDERSTAND THE LAWS

7  THERE, AND THIS WOULD BE SEEING SOMETHING I THINK YOU NEED

8  TO BE IN PRACTICE THERE TO UNDERSTAND EXACTLY HOW THESE

9  COURTS WORK BECAUSE IT IS VERY CONFUSING TO WORK VERSUS

10 HERE IN TENNESSEE.  I JUST KNOW FROM MY OWN PRACTICAL

11 EXPERIENCE THAT IF I HAVE A SEALED FILE, THAT MEANS IT'S A

12 JUVENILE COURT FILE AND WE CANNOT ACCESS IT.  THAT MEANS

13 THE PERSON WAS A JUVENILE.

14          THE COURT:  ALL RIGHT.

15          PROBATION OFFICER JOSEPH:  YOUR HONOR, I JUST

16 WANT TO MAKE SURE THAT, I GUESS, THE GOVERNMENT AND YOUR

17 HONOR HAS A COPY OF SOMETHING THAT MR. STAMBAUGH MIGHT

18 HAVE WITH HIS ADDENDUM.

19          THE COURT:  HE JUST HANDED ME HIS COPY.

20          PROBATION OFFICER JOSEPH:  OKAY.

21          THE COURT:  I HAVE MR. STAMBAUGH'S COPY.

22          PROBATION OFFICER JOSEPH:  I APOLOGIZE.  I

23 DON'T KNOW WHY THAT DIDN'T GET DISTRIBUTED TO EVERYONE.

24          THE COURT:  WELL, I UNDERSTOOD --

25          MR. BOWMAN:  I'VE NOT SEEN IT.  I DON'T KNOW

1    THAT I DIDN'T -- IT'S POSSIBLE I OVERLOOKED IT IN THE

2    E-MAIL, BUT ALL I'VE SEEN IS THE ADDENDUM ALONG WITH THE

3    LASANE CASE, YOUR HONOR.  I'M NOT SAYING THAT IT'S THE

4    FAULT OF --

5            MR. STAMBAUGH:  IT IS -- TO ME, IT JUST ADDS TO

6    THE CONFUSION.

7            MR. BOWMAN:  THANK YOU.

8            WHAT THIS APPEARS TO ME TO BE, YOUR HONOR, IS

9    SIMPLY A PORTAL REPORT, WHICH, YOU KNOW, LAW ENFORCEMENT

10   ENTITIES CAN RUN AND SIMILAR TO AN NCIC REPORT.  I DON'T

11   THINK THAT THE ACTUAL TITLES, YOU KNOW, UNDER CYCLE ONE

12   WOULD HAVE ANY BEARING ON THE ADJUDICATION BECAUSE THE

13   ONES THAT I'VE READ IN THE PAST, THEY, THEY TYPICALLY LIST

14   ADJUDICATIONS UNDER SEPARATE CATEGORIES, SUCH AS AUTO

15   OFFENSES, YOU KNOW, FELONY CONVICTIONS, MISDEMEANOR

16   CONVICTIONS.  I WOULD -- IT WOULD BE MY CONJECTURE,

17   OBVIOUSLY, YOU KNOW, I'M NOT -- I CAN'T SAY FOR CERTAIN,

18   BUT WHAT THEY'RE SIMPLY DOING IS LISTING VARIOUS TYPES OF

19   OFFENSES THAT WOULD FALL UNDER EITHER OF THOSE CATEGORIES.

20           THE COURT:  LET'S ADDRESS THE QUESTION FIRST

21   THAT MR. STAMBAUGH RAISES ABOUT WHETHER OR NOT THIS

22   DOCUMENT IS SUFFICIENT TO PROVE THAT THE CONVICTION

23   ACTUALLY OCCURRED, BUT IT NOW SOUNDS LIKE MR. SUERO ADMITS

24   THAT HE WAS IN FACT CONVICTED UPON HIS GUILTY PLEA AND

25   RECEIVED A YOUTHFUL OFFENDER ADJUDICATION AND THEN SERVED

1  HIS TIME IN A JUVENILE FACILITY; AND MR. SUERO IS SHAKING

2  HIS HEAD YES.

3          THE DEFENDANT:  YES, SIR.

4          THE COURT:  SO I GUESS AT THIS POINT THE ISSUE

5  OF WHETHER THE CONVICTION OCCURRED OR NOT IS SOMEWHAT MOOT

6  IN LIGHT OF THAT ADMISSION.

7          MR. STAMBAUGH:  THAT'S CORRECT, YOUR HONOR.

8          THE COURT:  SO IT IS SUFFICIENT TO ESTABLISH

9  THE CONVICTION ITSELF, THAT LEAVES THE COURT THEN WITH THE

10  QUESTION OF WHETHER OR NOT A YOUTHFUL OFFENDER ADJUDICA-

11  TION IN THE BRONX COUNTY SUPREME COURT, AN ADULT COURT,

12  WHICH RESULTED IN A SENTENCE THAT WAS SERVED IN A JUVENILE

13  FACILITY QUALIFIES FOR THE POINTS UNDER, UNDER THE

14  GUIDELINES.

15          MR. STAMBAUGH:  YOUR HONOR, IF I MAY HAVE

16  ANOTHER MOMENT WITH MY CLIENT.

17          THE COURT:  YOU MAY.

18          MR. STAMBAUGH:  THANK YOU, YOUR HONOR.

19      (OFF-THE-RECORD DISCUSSION BETWEEN THE DEFENDANT AND

20  HIS ATTORNEY)

21          MR. STAMBAUGH:  YOUR HONOR, AND IT MAY BE

22  SOMETHING MY CLIENT MAY WISH TO ADDRESS THE COURT

23  REGARDING, AND ACTUALLY IT GOES BACK TO HIS PRESENTENCE

24  REPORT.  HE'S STATING THAT WHEN HE WAS SERVING TIME IN

25  THAT JUVENILE DETENTION FACILITY, HE ACTUALLY PICKED UP A

1  CHARGE THERE, AND I BELIEVE IT WAS CATEGORIZED LIKE

2  HARASSMENT OF AN EMPLOYEE.  DURING THAT TIME PERIOD, AND

3  THEN ON THERE HE SAYS IT ALSO SHOWS THE ADDRESS OF THE

4  JUVENILE DETENTION FACILITY, SO HE WAS IN A JUVENILE

5  DETENTION FACILITY, AND THAT SHOWS WHERE HE SERVED HIS

6  TIME BECAUSE HE PICKED UP THAT CHARGE THERE.  HE SAID HE

7  WAS THERE FOR TWO YEARS -- HE SAYS THAT WAS 300 SOUTH

8  MCCORMICK ROAD IN NEW YORK.

9          YOUR HONOR, I DON'T KNOW IF IT'S TAKEN INTO

10  ACCOUNT IN HIS REPORT, BUT PART OF THE INFORMATION WE GOT

11  IN OUR DISCOVERY WAS, I GUESS, WOULD BE THE CRIMINAL

12  HISTORY RECORD OF THE DEFENDANT, AND IT DOES SAY THAT HE

13  WAS CHARGED WITH AGGRAVATED HARASSMENT OF AN EMPLOYEE BY

14  AN INMATE.

15          THE COURT:  IT DOES.

16          MR. BOWMAN:  I GUESS MY QUESTION, YOUR HONOR,

17  ARE WE REFERRING TO THE -- IS THAT THE 2009 MATTER, OR

18  THERE IS LISTED IN PARAGRAPH 34, NUMBER 12, HARASSMENT

19  SECOND DEGREE.

20          MR. STAMBAUGH:  YOUR HONOR, I BELIEVE IT'S THE

21  2009.

22          THE COURT:  IT APPEARS TO BE THE PARAGRAPH 35.

23          MR. BOWMAN:  OKAY.

24          THE COURT:  ANYTHING ELSE, MR. STAMBAUGH?  I

25  DON'T MEAN TO CUT YOU OFF.

1          MR. STAMBAUGH:  NO, YOUR HONOR.

2          THE COURT:  ANYTHING ELSE FROM THE GOVERNMENT,

3    MR. BOWMAN?

4          MR. BOWMAN:  YOUR HONOR, LOOKING AT THIS PORTAL

5    REPORT -- NOW, THIS IS, OF COURSE, NOT JUST AN NCIC

6    REPORT, IT GOES INTO A LOT OF DETAIL, SHOWING THE DATE FOR

7    ARRAIGNMENT, SHOWING THE ACTUAL STATUTES CHARGED, REFERS

8    TO A TRANSFER TO SUPERIOR COURT.  THEN IT INDICATES MARCH

9    2, 2007, DISMISSED, SUPERSEDED AS TO ASSAULT II; REFLECTS

10   AN ARRAIGNMENT, REFLECTS AT THE BOTTOM OF PAGE 11 A

11   CONVICTION DATE OF OCTOBER 12, 2007.

12         THE COURT:  IT ACTUALLY SHOWS A LITTLE BIT MORE

13   THAN THAT.  IT SHOWS THAT AFTER SUPERSEDING THE CASE WAS

14   ASSIGNED IN THE BRONX COUNTY SUPREME COURT.

15         MR. BOWMAN:  CORRECT, YOUR HONOR; AND GOING

16   BACK UP TO THAT, OF COURSE, SHOWS NOT ONLY THAT, ONCE IT

17   WAS REASSIGNED, HE'S ARRAIGNED.  APPARENTLY HE WAS PLACED

18   ON BOND BECAUSE THEN AFTER THE CONVICTION, BECAUSE THEN IN

19   FEBRUARY OF 2008, A BENCH WARRANT ISSUED FOR HIS ARREST;

20   AND THEN HE'S ULTIMATELY SENTENCED ON MARCH 28, 2008, AND

21   THERE'S ALSO AN ORDER OF PROTECTION.  AND WE'RE SORT OF

22   IN -- WE'RE IN THIS DIFFICULT SITUATION HERE, YOUR HONOR,

23   WHERE THE ONLY PERSON THAT HAS ACCESS TO THE RECORDS, IT

24   WOULD APPEAR, IS THE DEFENDANT.  I DON'T KNOW WHY THE

25   RECORDS BEYOND THESE ARE UNDER SEAL SINCE THESE PAINT A

1 PICTURE, MAYBE THAT IT'S TO PROTECT A VICTIM, I DON'T

2 KNOW, YOUR HONOR; BUT WHAT WE -- WHAT I THINK WE HAVE HERE

3 IS A SITUATION WHERE IT WOULD TAKE AN ACTUAL, IT WOULD

4 TAKE AN ACTUAL RELEASE SIGNED BY THE DEFENDANT BEFORE THE

5 COURT APPARENTLY WOULD AUTHORIZE THE RELEASE OF THOSE

6 RECORDS.

7          SO WHILE THE GOVERNMENT HAS A CERTAIN BURDEN

8 HERE, I DON'T HAVE THE POWER TO, TO HAVE THE DEFENDANT

9 EXECUTE A RELEASE, YOUR HONOR, SO THIS IS ALL THAT -- THIS

10 IS ALL, OF COURSE, THAT WE COULD RELY UPON, YOUR HONOR.

11          THE COURT:  ALL RIGHT.  MS. JOSEPH, MAYBE YOU

12 NEED TO TAKE THE WITNESS STAND FOR JUST A MINUTE AND LET

13 ME CLARIFY WHAT THIS DOCUMENT IS, AND LET'S MAKE THE

14 DOCUMENT PART OF THE RECORD HERE.

15          PROBATION OFFICER JOSEPH:  YOUR HONOR, I'M NOT

16 SURE I CAN.

17          THE COURT:  YOU KNOW WHERE THIS CAME FROM?

18          PROBATION OFFICER JOSEPH:  THIS IS NATHAN'S

19 CASE, AND I'M NOT REALLY SURE WHERE HE GOT THIS, YOUR

20 HONOR.  I APOLOGIZE.

21          THE COURT:  HAVE YOU SEEN ONE LIKE THIS BEFORE?

22          PROBATION OFFICER JOSEPH:  I HAVE NOT.

23          HE WILL BE BACK -- HE TOLD ME HE WOULD BE BACK

24 BETWEEN 3:00 AND 3:30 PROBABLY.  I HATE FOR THE COURT TO

25 CONTINUE THIS UNTIL LATER, BUT I'M NOT SURE REALLY WHAT

1 ALL I CAN ADD AS TO WHAT THIS IS.

2        THE COURT: I THINK I JUST ASSUMED THIS WAS AN

3 NCIC REPORT, BUT I DON'T THINK IT IS. IT APPEARS TO HAVE

4 COME FROM A WEBSITE.

5        PROBATION OFFICER JOSEPH: I WANT TO SAY HE GOT

6 THIS FROM THE U.S. PROBATION IN NEW YORK, BUT I'M NOT 100

7 PERCENT SURE, YOUR HONOR. I APOLOGIZE.

8        MR. BOWMAN: YOUR HONOR, WHEN I DEAL WITH

9 AGENCIES HERE IN TENNESSEE, THEY USE A WEBSITE THAT'S,

10 THEY REFER TO AS A PORTAL, CRIMINAL JUSTICE PORTAL.

11        THE COURT: THAT APPEARS TO BE WHAT THIS IS.

12        MR. BOWMAN: AND THAT'S WHAT I'M ASSUMING IT

13 IS, AND SO YOU OR I COULD NOT ACTUALLY GO INTO THAT AND

14 LOOK AT ANYTHING. IT WOULD REQUIRE SOMEBODY THAT'S BEEN

15 TRAINED AND AUTHORIZED TO USE IT AND HAS A PASSWORD.

16        MR. STAMBAUGH: YOUR HONOR, I BELIEVE, YOUR

17 HONOR, THAT'S CORRECT. I BELIEVE, I THINK THAT'S PROBABLY

18 THE TYPE OF DOCUMENT THAT IT IS. I ALSO JUST WANT TO PUT

19 ON THE RECORD THAT I BELIEVE MY CLIENT SIGNED EVERYTHING

20 THAT HE WAS REQUIRED TO DO FROM A RELEASE STANDPOINT. I'M

21 NOT SURE WHAT ELSE HE COULD HAVE SIGNED TO HAVE AIDED THE

22 COURT TODAY.

23        THE COURT: WELL, HERE'S WHAT IT APPEARS THIS

24 DOCUMENT SHOWS: MR. SUERO APPEARS TO HAVE BEEN ARRESTED

25 ON FEBRUARY 5, 2007, FOR OFFENSES ALLEGEDLY COMMITTED ON

1   FEBRUARY 3, 2007, AND WAS CHARGED WITH VARIOUS FELONY AND

2   MISDEMEANOR CASES, THE MOST SERIOUS BEING A FIRST DEGREE

3   ROBBERY CHARGE IN THE BRONX COUNTY CRIMINAL COURT, CASE

4   NUMBER OF 2007 BX008538.  IT APPEARS THAT ON THE SAME DAY

5   THE CASE WAS TRANSFERRED TO THE SUPERIOR COURT, BUT IT

6   INDICATES THERE WAS NO ARRAIGNMENT IN THE SUPERIOR COURT,

7   AND THE CASE WAS SUPERSEDED ON MARCH 2, 2007, AND

8   SUBSEQUENTLY THE DEFENDANT WAS ARRAIGNED ON APRIL 11,

9   2007, ON VARIOUS FELONY AND MISDEMEANOR CHARGES IN THE

10   BRONX COUNTY SUPREME COURT IN CASE NUMBER 00923-2007.  THE

11   REPORT INDICATES THAT MR. SUERO WAS CONVICTED ON OCTOBER

12   12, 2007, OF ROBBERY IN THE FIRST DEGREE AND ADJUDICATED A

13   YOUTHFUL OFFENDER AFTER HIS PLEA OF GUILTY, THAT GUILTY

14   PLEA APPARENTLY BEING IN FULL SATISFACTION OF ALL OF THE

15   CHARGES CONTAINED IN THE INDICTMENT.

16         I MEAN, IT DOES APPEAR AS REFLECTED IN THE

17   PRESENTENCE REPORT THAT HE WAS SENTENCED TO A TERM, AN

18   INDETERMINATE TERM OF 16 MONTHS TO 48 MONTHS, OR 16 MONTHS

19   TO 4 YEARS.  MR. SUERO DOES NOT CONTEST THAT HE WAS

20   CONVICTED IN THE BRONX COUNTY SUPREME COURT, NOR DOES HE

21   CONTEST THAT HE WAS ADJUDICATED A YOUTHFUL DEFENDER --

22   YOUTHFUL OFFENDER, HE SIMPLY POINTS OUT TO THE COURT THAT

23   HE WAS REQUIRED TO SERVE HIS SENTENCE NOT IN AN ADULT

24   FACILITY, BUT IN A JUVENILE FACILITY.

25         NOW, THE QUESTION, OF COURSE, IS WHETHER OR NOT

1   THAT QUALIFIES FOR THE THREE CRIMINAL HISTORY POINTS

2   ASSIGNED IN PARAGRAPH 34 OF THE PRESENTENCE REPORT PUR-

3   SUANT TO SECTION 4A1.1(A) WHICH PROVIDES FOR THREE POINTS

4   FOR EACH PRIOR SENTENCE OF IMPRISONMENT EXCEEDING ONE YEAR

5   AND ONE MONTH.

6         MORE SPECIFICALLY, I SUPPOSE THE QUESTION IS

7   REALLY WHETHER OR NOT THIS WAS AN ADULT CONVICTION.  OF

8   COURSE, UNDER THE GUIDELINES DEFINITION ADULT CONVICTIONS

9   INCLUDE OFFENSES COMMITTED BEFORE, PRIOR TO A DEFENDANT'S

10   EIGHTEENTH BIRTHDAY IF HE WAS CONVICTED AS AN ADULT AND

11   RECEIVED A SENTENCE OF IMPRISONMENT EXCEEDING ONE YEAR AND

12   ONE MONTH.

13         THERE IS NO SIXTH CIRCUIT AUTHORITY ON THIS

14   ISSUE SO FAR AS THE COURT CAN TELL.  THERE HAVE BEEN A

15   SERIES OF CASES, HOWEVER, IN THE SECOND CIRCUIT DEALING

16   WITH THE ISSUE; AND I DIDN'T HAVE ALL OF THESE PREPARED,

17   BUT ONE OF THE EARLIEST IS THE CASE OF UNITED STATES OF

18   AMERICA VERSUS MALIK DRISKELL, FOUND AT 277 F.3D 150.  IN

19   THAT PARTICULAR CASE THE DEFENDANT WAS CONVICTED OF

20   ATTEMPTED MURDER IN THE SECOND DEGREE WHEN HE WAS 17.  HE

21   WAS SUBSEQUENTLY ADJUDICATED A YOUTHFUL OFFENDER, RECEIVED

22   HIS SENTENCE EXCEEDING ONE YEAR AND ONE MONTH AND SERVED

23   THAT TIME IN AN ADULT PRISON.  IN THE DRISKELL CASE THE

24   SECOND CIRCUIT ADDRESSED THE SPECIFIC QUESTION OF WHETHER

25   OR NOT SUCH A CONVICTION SUBSEQUENTLY REPLACED BY A

1   YOUTHFUL OFFENDER ADJUDICATION COULD EVER CONSTITUTE AN

2   ADULT CONVICTION UNDER SECTION 4A1.1.  THE SECOND CIRCUIT

3   IN THAT CASE HELD THAT IT WAS PROPERLY COUNTED AND THE

4   CRIMINAL HISTORY POINTS PROPERLY ASSESSED.

5         THEN IN -- THAT CASE WAS DECIDED IN 2002.  THEN

6   IN 2004 IN THE CASE OF UNITED STATES VERSUS CUELLO, 357

7   F.3D 162, THE SECOND CIRCUIT AGAIN CONSIDERED AN APPEAL BY

8   A DEFENDANT WHO HAD BEEN CONVICTED OF UNLAWFUL RECEIPT,

9   POSSESSION OR TRANSPORTATION OF FIREARMS OR AMMUNITION AND

10   ENGAGING IN PROHIBITED TRANSACTIONS INVOLVING FIREARMS FOR

11   AMMUNITION.  THE QUESTION WAS WHETHER OR NOT A PRIOR

12   YOUTHFUL OFFENDER ADJUDICATION COUNTED AS A FELONY OFFENSE

13   FOR THE PURPOSE OF ESTABLISHING THE BASE OFFENSE LEVEL.

14   THE CASE HINGED ON WHETHER OR NOT A 1996 CONTROLLED

15   SUBSTANCE OFFENSE IN WHICH THE DEFENDANT HAD BEEN

16   DESIGNATED A YOUTHFUL OFFENDER CONSTITUTED A PRIOR FELONY

17   CONVICTION.

18         IT EXPLAINS A LITTLE BIT ABOUT WHAT THE

19   YOUTHFUL OFFENDER STATUTE IS.  APPARENTLY UNDER THAT

20   STATUTE -- THAT IS A LEGAL STATUS WHICH THE COURTS OF NEW

21   YORK MAY ASSIGN TO A CONVICTED DEFENDANT BETWEEN THE AGES

22   OF 16 AND 19 WHO MEET CERTAIN CONDITIONS.  THE COURTS MAY

23   DESIGNATE AN ELIGIBLE CONVICTED DEFENDANT A YOUTHFUL

24   OFFENDER IF IN THE OPINION OF THE COURT THE INTERESTS OF

25   JUSTICE WOULD BE SERVED BY RELIEVING THE ELIGIBLE YOUTH

1 FROM THE ONUS OF A CRIMINAL RECORD.  ONCE A CRIMINAL

2 DEFENDANT -- CONVICTED DEFENDANT IS ADJUDICATED A YOUTHFUL

3 OFFENDER, HIS CONVICTION IS DEEMED VACATED AND REPLACED BY

4 A YOUTHFUL OFFENDER FINDING, AND THE COURT IMPOSES A

5 YOUTHFUL OFFENDER SENTENCE UNDER NEW YORK PENAL CODE.

6 THAT APPEARS TO BE WHAT HAPPENED HERE.  THIS CASE, SO FAR

7 AS I CAN TELL, MAKES NO MENTION OF WHERE THE DEFENDANT HAD

8 SERVED HIS SENTENCE.  THE DEFENDANT ARGUED, HOWEVER, THAT

9 HIS YOUTHFUL OFFENDER ADJUDICATION DID NOT CONSTITUTE A

10 FELONY OFFENSE BECAUSE THE YOUTHFUL OFFENDER ADJUDICATION

11 HAD THE EFFECT OF VACATING AND REPLACING HIS CONVICTION.

12 THE SECOND CIRCUIT REJECTED THAT ARGUMENT, HOLDING THAT

13 THE DEFENDANT'S POSITION WAS FORECLOSED BY THE SECOND

14 CIRCUIT'S DECISION IN UNITED STATES VERSUS DRISKELL.

15     IN -- I THINK THAT WAS A 2004 CASE.  IN 2003

16 THE SECOND CIRCUIT HAD CONSIDERED ANOTHER SIMILAR APPEAL

17 IN WHICH A MINOR DEFENDANT HAD BEEN ADJUDICATED A YOUTHFUL

18 OFFENDER AFTER AN ARMED ROBBERY CONVICTION.  AGAIN, SO FAR

19 AS I CAN TELL, THIS CASE MAKES NO MENTION OF WHERE THE

20 DEFENDANT SERVED HIS SENTENCE.  HE WAS 17 AT THE TIME.  HE

21 WAS ADJUDICATED A YOUTHFUL OFFENDER, CONVICTION VACATED,

22 THEREAFTER COMMITTED SEVERAL OTHER OFFENSES AND WAS

23 EVENTUALLY DEPORTED TO THE DOMINICAN REPUBLIC.  HE

24 RETURNED ILLEGALLY AND, OF COURSE, WAS CHARGED WITH

25 ILLEGAL REENTERING AND CONVICTED IN THE DISTRICT COURT,

1   AND THE DISTRICT COURT JUDGE IN THAT CASE APPLIED THE

2   THREE CRIMINAL HISTORY POINTS UNDER 4A1.1(A).

3               THE DEFENDANT CONTENDED ON APPEAL THAT HIS

4   YOUTHFUL OFFENDER ADJUDICATION PRECLUDED A FINDING THAT

5   HIS ARMED ROBBERY RESULTED IN ANY CONVICTION UNDER STATE

6   LAW; AND, ONCE AGAIN, THE SECOND CIRCUIT IN AN OPINION

7   WRITTEN BY JUDGE SOTOMAYOR, NOW A SUPREME COURT JUSTICE,

8   HELD THAT THE ARGUMENT WAS FORECLOSED BY DRISKELL.  HERE'S

9   WHAT SHE SAID, "THIS ARGUMENT IS FORECLOSED BY OUR HOLDING

10  IN UNITED STATES VERSUS DRISKELL THAT A YOUTHFUL OFFENDER

11  ADJUDICATION REMAINS A CONVICTION IN SUBSTANCE REGARDLESS

12  OF ITS CHARACTERIZATION UNDER NEW YORK LAW."  SHE GOES IN

13  TO SOME DISCUSSION ABOUT THE PURPOSE OF THE YOUTHFUL

14  OFFENDER ADJUDICATION UNDER NEW YORK LAW, INCLUDES THAT A

15  YOUTHFUL OFFENDER ADJUDICATION IS NOT INTENDED TO ABSOLVE

16  YOUTHFUL OFFENDERS OF CRIMINAL RESPONSIBILITY, BUT RATHER

17  TO PUNISH THEM FOR THEIR CRIMES WHILE AIDING IN THEIR

18  POST-CONVICTION REHABILITATION.  SHE SAYS, "BECAUSE AN

19  ELIGIBLE YOUTH IS NOT DEEMED A YOUTHFUL OFFENDER UNTIL

20  AFTER HE HAS BEEN CONVICTED AS AN ADULT, AND THE COURT HAS

21  IN ITS DISCRETION DETERMINED THAT THE INTEREST OF JUSTICE

22  WOULD BE SERVED BY RELIEVING THE ELIGIBLE YOUTH FROM THE

23  ONUS OF A CRIMINAL RECORD DOES THE YOUTHFUL OFFENDER

24  ADJUDICATION OCCUR."  AND SHE CITES DRISKELL'S HOLDING

25  THAT CONCLUDED THAT A YOUTHFUL OFFENDER ADJUDICATION DOES

1    NOT ALTER THE SUBSTANCE OF THE DEFENDANT'S ADULT

2    CONVICTION.  THIS CASE ONCE AGAIN IS SILENT ON WHETHER OR

3    NOT THE DEFENDANT ACTUALLY SERVED ANY TIME; AND IF SO,

4    WHERE HE SERVED IT, GIVEN THAT YOUTHFUL OFFENDER

5    ADJUDICATION.

6             AND THEN, FINALLY, IN 2014 THE SECOND CIRCUIT

7    DECIDED THE CASE OF UNITED STATES VERSUS LASANE, 579

8    FED.APPX. 51, THAT WE'VE ALREADY TALKED ABOUT HERE, WHICH

9    CONCLUDES THAT A YOUTHFUL ADJUDICATION IN A CASE PROSE-

10   CUTED IN THE BRONX COUNTY SUPREME COURT, WHICH IS AN ADULT

11   FORUM, BUT WHICH HAD A SUBSEQUENT DESIGNATION AS A YOUTH-

12   FUL OFFENDER, NEVERTHELESS, COUNTED UNDER THE GUIDELINES

13   BECAUSE, IF I READ THE OPINION RIGHT, THE DEFENDANT WAS IN

14   FACT CONVICTED OF FELONIES, RECEIVED SENTENCES AMOUNTING

15   TO FELONY TIME; AND IN THIS PARTICULAR CASE, AS

16   MR. STAMBAUGH HAS POINTED OUT, HE DID IN FACT SERVE THOSE

17   SENTENCES IN THE NEW YORK DEPARTMENT OF CORRECTIONS ADULT

18   FACILITY.  IT DOES NOT APPEAR TO ME, HOWEVER, THAT THE

19   FACT THAT THIS SENTENCE WAS SERVED IN AN ADULT FACILITY

20   WAS DISPOSITIVE OR BASICALLY HAD ANY, ANY IMPACT ON THIS

21   CASE OTHER THAN THE FACT THAT THE COURT DECIDED THAT IT'S

22   ONE MORE REASON WHY THIS WAS IN FACT AN ADULT CONVICTION

23   AND ULTIMATELY FOUND THAT DRISKELL AND CUELLO WERE WELL

24   SETTLED, PART OF A WELL SETTLED BODY OF LAW IN THE SECOND

25   CIRCUIT AND DECLINED TO DEPART FROM THOSE HOLDINGS.  IN

1   OTHER WORDS, FOUND THAT THE YOUTHFUL OFFENDER ADJUDICATION

2   WAS IN FACT WITHIN THE SCOPE OF 4A1.1(A) AND THE

3   ASSESSMENT OF CRIMINAL HISTORY POINTS APPROPRIATELY.

4          NOW, THE DOCUMENT THAT THE PROBATION OFFICER

5   HAS APPARENTLY RELIED UPON FOR THE INFORMATION CONTAINED

6   IN THE PRESENTENCE REPORT DOES NOT APPEAR TO BE AN NCIC

7   REPORT, I MISSPOKE ON THAT EARLIER.  WHAT IT APPEARS TO BE

8   IS A REPORT, A NEW YORK GOVERNMENT REPORT, OBTAINED AT A

9   WEBSITE CALLED E-JUSTICE NEW YORK THROUGH THIS PORTAL

10  DESIGNATION THAT MR. BOWMAN MENTIONED.  INTERESTINGLY, THE

11  REPORT DOES REFERENCE AN NCIC NUMBER.  PRESUMABLY IF AN

12  NCIC REPORT WERE RUN, IT WOULD SHOW THE CONVICTION BECAUSE

13  OF THAT NUMBER, BUT.  IN ANY EVENT, IF THIS DOCUMENT IS

14  WHAT IT APPEARS TO BE, I THINK THAT'S -- MAYBE WE HAVE TO

15  HAVE OFFICER WOLFE CONFIRM WHERE HE GOT IT; BUT IF IT'S

16  WHAT IT APPEARS TO BE, THEN I THINK, ESPECIALLY IN LIGHT

17  OF MR. SUERO'S ACKNOWLEDGMENT THAT HE WAS CONVICTED IN THE

18  BRONX COUNTY SUPREME COURT, AN ADULT COURT, OF A FIRST

19  DEGREE ROBBERY FELONY CHARGE, THAT THERE WAS A SUBSEQUENT

20  YOUTHFUL OFFENDER ADJUDICATION, THAT THE SECOND CIRCUIT

21  PRECEDENT IS PERSUASIVE -- I WOULD CERTAINLY PREFER TO

22  HAVE SIXTH CIRCUIT PRECEDENT HERE, BUT THERE DOES NOT

23  APPEAR TO BE ANY, AS I MENTIONED; BUT I DO FIND THE SECOND

24  CIRCUIT, WHICH, OF COURSE, INCLUDES NEW YORK, THESE CASES,

25  TO PEOPLE BE PERSUASIVE ON THE ISSUE.

1    SO WHERE THAT LEAVES US IS, IN MY VIEW, WITH A

2  DETERMINATION THAT IT MAKES NO DIFFERENCE WHERE MR. SUERO

3  SERVED THE SENTENCE; THAT'S NOT A DETERMINATIVE FACTOR

4  HERE.  HE WAS CONVICTED OF A FELONY OFFENSE, HE RECEIVED A

5  SENTENCE OF MORE THAN A YEAR AND A MONTH, HE WAS SUBSE-

6  QUENTLY ADJUDICATED AS A YOUTHFUL OFFENDER UNDER NEW YORK

7  LAW.  I THINK THAT'S THE END OF THE INQUIRY, AND AS A

8  RESULT THE OBJECTION IS DUE TO BE OVERRULED.

9    NOW, MR. STAMBAUGH, IF YOU WANT US TO WAIT FOR

10 MR. WOLFE, WE WILL, AND HE CAN ESTABLISH WHERE HE GOT

11 THIS; BUT I THINK IT'S PRETTY CLEAR THAT WHAT HE'S GOING

12 TO TELL US IS HE OBTAINED THIS FROM PROBATION IN NEW YORK,

13 WHO OBTAINED IT FROM THIS E-JUSTICE NEW YORK WEBSITE.

14    MR. STAMBAUGH:  I BELIEVE THAT'S WHAT HE'D

15 TESTIFY TO, YOUR HONOR.  HE AND I ABOUT IT WHEN HE SENT

16 THE DOCUMENT TO ME.

17    PROBATION OFFICER JOSEPH:  YOUR HONOR, HE SAID

18 HE'LL BE HERE IN ABOUT 15 MINUTES.  I BELIEVE HE DID GET

19 IT FROM THE U.S. PROBATION OFFICE IN NEW YORK.  NOW, WHERE

20 THEY GOT IT, I'M NOT SURE.  HE MIGHT BE ABLE TO ANSWER

21 THAT QUESTION, BUT --

22    THE COURT:  WELL, I THINK THE WEBSITE AT THE

23 BOTTOM INDICATES WHERE THEY GOT IT, BUT OKAY.  HE'S

24 PROBABLY GOING TO BE HERE IN 15 MINUTES.

25    MR. BOWMAN:  I CHECKED THAT WEBSITE ON MY

1  PHONE, YOUR HONOR, AND IT DOES REQUIRE A LOG-IN, BUT IT

2  APPEARS TO BE JUST WHAT I REPRESENTED TO THE COURT.

3  THE COURT:  ALL RIGHT.  I THINK THAT'S RIGHT.

4  SO I'D LIKE TO FILE A COPY OF THIS.  MR. STAMBAUGH, I

5  DON'T WANT TO FILE YOURS, YOU'VE GOT SOME NOTES ON IT.

6  MR. STAMBAUGH:  THAT'S CORRECT, YOUR HONOR.

7  THE COURT:  SO I'D LIKE TO FILE A CLEAN COPY OF

8  THIS REPORT AS AN EXHIBIT TO THIS HEARING.

9  MR. BOWMAN:  THERE'S ACTUALLY NOTES ON

10  PROBATION COPY AS WELL.  I'M NOT SURE IF --

11  THE COURT:  WELL, MR. STAMBAUGH HAS SOME NOTES

12  ON THE BACK OF HIS.

13  MR. BOWMAN:  OKAY.  IT'S PROBABLY SOME OF

14  MR. WOLFE'S NOTES YOUR HONOR.

15  PROBATION OFFICER JOSEPH:  THERE'S A FEW NOTES

16  ON HERE, YOUR HONOR, BUT I CAN GIVE YOU --

17  MR. STAMBAUGH:  THERE WERE, YOUR HONOR, BUT

18  THEY WERE JUST --

19  THE COURT:  THEY DIDN'T APPEAR TO HAVE ANYTHING

20  TO DO.  THOSE --

21  MR. STAMBAUGH:  NO, NO, NOT AT ALL, YOUR HONOR.

22  THIS WAS JUST FOR MY CLIENT'S DOCUMENTATION, THAT'S ALL

23  THAT WAS.

24  PROBATION OFFICER JOSEPH:  I APOLOGIZE, YOUR

25  HONOR, THAT WE DON'T HAVE AN EXTRA COPY OF THIS ON HAND.

1          THE COURT:  WELL, I'M SURE MS. HOPSON CAN MAKE

2     US A COPY.

3          ALL RIGHT THEN, WITH THAT RULING, I'M GOING TO

4     ADOPT THIS PRESENTENCE REPORT AS THE COURT'S FINDINGS IN

5     THE CASE.  I WILL APPLY AN ADVISORY RANGE OF 70 TO 87

6     MONTHS AND A STATUTORY RANGE OF A MANDATORY MINIMUM TERM

7     OF 5 YEARS TO A MAXIMUM TERM OF 40.

8          ALL RIGHT.  MR. BOWMAN, I'LL HEAR THE

9     GOVERNMENT'S ARGUMENT.

10          MR. BOWMAN:  THANK YOU, YOUR HONOR.

11          AS THE COURT JUST ALLUDED TO, MR. SUERO FACES A

12    CRIMINAL HISTORY CATEGORY OF 3; AND I THINK WHAT'S MOST

13    SURPRISING ABOUT THAT IS THAT HE'S ONLY 23 YEARS OF AGE,

14    YOUR HONOR.  SO HE'S IN A SHORT PERIOD OF TIME AMASSED

15    THOSE CRIMINAL HISTORY POINTS.  I NOTED THAT EACH OF THOSE

16    CRIMINAL HISTORY POINTS IS ATTACHED TO A VIOLENT

17    OFFENSE.

18          THE COURT:  MR. BOWMAN, I HATE TO INTERRUPT

19    YOUR THOUGHT, BUT IF YOU COULD HOLD IT FOR JUST A MINUTE.

20    I THINK I MISSPOKE JUST A MINUTE AGO.  I THINK I SAID

21    THERE WAS A CRIMINAL HISTORY CATEGORY OF 2.  THERE'S A

22    CRIMINAL HISTORY CATEGORY OF 3.  WE REDUCED THE CRIMINAL

23    HISTORY POINTS TO 5, WHICH IS CRIMINAL HISTORY CATEGORY 3.

24          MR. BOWMAN:  CORRECT, BECAUSE THE ORIGINAL PSR

25    INDICATED A HISTORY OF 4, YOUR HONOR.  THERE WAS A FIRST

1 ADDENDUM TO THE REPORT THAT INDICATED IT WAS A CRIMINAL

2 HISTORY CATEGORY 3.

3          BUT WHAT I NOTED IS THAT EACH OF THOSE

4 CONVICTIONS, YOUR HONOR, IS A VIOLENT CONVICTION.

5          THE COURT HAS REVIEWED THE PSR, OBVIOUSLY.  THE

6 FACTUAL BASIS, THE COURT IS AWARE OF THE WAY THE DEFENDANT

7 GOT TO WHERE HE IS, AND THE OFFENSE CONDUCT WHICH INVOLVED

8 HIM AND THE OTHER INDIVIDUALS INVOLVED IN THE CONSPIRACY

9 TO DISTRIBUTE CRACK COCAINE IN THE EASTERN DISTRICT OF

10 TENNESSEE COMING OUT OF NEW YORK.

11          THAT SAID, YOUR HONOR, TAKING THE DEFENDANT'S

12 YOUTHFULNESS INTO CONSIDERATION AND TAKING INTO CONSIDERA-

13 TION THE EASE, SUCH AS IT WERE, IN OBTAINING A PLEA IN

14 THIS CASE, WE DID AGREE TO LET HIM COMMIT -- OR PERMIT HIM

15 TO PLEA TO A LESSER INCLUDED OFFENSE; AND FOR THAT REASON

16 HE DOES FACE A MINIMUM MANDATORY 5 YEARS HERE, BUT HE DOES

17 NOT FACE THE 10 YEAR MINIMUM MANDATORY HE WOULD HAVE FACED

18 HAD HE PLED OR BEEN CONVICTED OF IN EXCESS OF 280 GRAMS;

19 AND I KNOW THE COURT HAS LOOKED AT THE FACTUAL BASIS, AND

20 I THINK IT IS CLEAR FROM THERE THAT THERE WAS CERTAINLY A

21 VERY GOOD ARGUMENT THERE FOR RESPONSIBILITY FOR IN EXCESS

22 OF 280 GRAMS.  I CERTAINLY THINK THERE'S A GOOD CHANCE THE

23 JURY WOULD HAVE HELD HIM ACCOUNTABLE FOR MORE THAN 280

24 GRAMS, PARTICULARLY TAKING INTO CONSIDERATION THE EXTENT

25 OF THE CONSPIRACY.  AND FOR ALL THOSE REASONS, YOUR HONOR,

1    I WOULD SUGGEST THAT A SENTENCE IN THE UPPER HALF OF THE

2    GUIDELINE RANGE IS WHAT WOULD BE APPROPRIATE IN THIS CASE.

3              THE COURT:  ALL RIGHT.

4              ALL RIGHT, MR. BOWMAN, THANK YOU VERY MUCH.

5              THE COURT:  ALL RIGHT.  MR. STAMBAUGH.

6              MR. STAMBAUGH:  YOUR HONOR, I KNOW THE COURT

7    HAS ALREADY REVIEWED MY SENTENCING MEMORANDUM.

8              THE COURT:  I HAVE.

9              MR. STAMBAUGH:  IT WAS NOT LENGTHY.  AGAIN,

10   IT'S A SITUATION WHERE MY CLIENT PLEADED GUILTY TO A

11   LESSER INCLUDED, NOT COOPERATED WITH THE GOVERNMENT.  HE

12   HAS A NUMBER OF FACTORS, OF COURSE, THAT A NUMBER OF

13   DEFENDANTS HAVE, DISADVANTAGED YOUTH, BEEN ADDICTED TO

14   DRUGS FOR QUITE SOME TIME.  THOSE ARE THINGS THAT THIS

15   COURT TYPICALLY SEES, AND BECAUSE OF THAT SOMETIMES I

16   DON'T BELIEVE THERE'S A GOOD FAITH ARGUMENT WITH THAT.

17             WITH THAT BEING SAID, JUST TO TOUCH ON WHAT

18   U.S.A. BOWMAN JUST MENTIONED IS, YES, A LOT OF THESE

19   THINGS DID HAPPEN WHEN HE WAS YOUNGER BECAUSE HE IS A

20   YOUNGER PERSON.  I THINK HIS -- AGAIN, WE'RE TALKING ABOUT

21   DISADVANTAGED YOUTH, I THINK HIS YOUTH DID PLAY A PART

22   INTO WHERE HE IS TODAY.  I THINK HE WAS, WHEN THIS ALL

23   OCCURRED, I THINK HE WAS ON A DIFFERENT PATH IN LIFE, WAS

24   EMPLOYED, TRYING TO DO DIFFERENT THINGS WITH HIS LIFE; BUT

25   THERE'S NO DOUBT IF YOU TAKE HIS CRIMINAL RECORD FROM HIS

1    EARLY TEENS ON TILL NOW, HE'S BEEN INVOLVED IN A NUMBER OF

2    INCIDENTS.  SOME OF THOSE HAVE BEEN VIOLENT.  SOME OF

3    THOSE HAVE BEEN DRUG RELATED AS WE ARE HERE.

4          WHAT MY CLIENT IS ASKING FOR IS A SENTENCE AT

5    THE BOTTOM OF THE GUIDELINE RANGE.  IT'S A SITUATION

6    AGAIN, HE WASN'T ONE OF THE MAIN CONSPIRATORS IN THIS

7    CASE, HE WAS MORE OF AN ISSUE OF, I'M NOT GOING TO SAY A

8    MINOR ROLE PLAYER, I ALREADY SAID THAT IN MY SENTENCING

9    MEMORANDUM, BUT HE WASN'T A MAJOR PARTICIPANT; THAT'S WHY

10   HE DOESN'T HAVE ANY ENHANCEMENTS OR ANY OF THOSE DIFFERENT

11   FACTORS.  HE DOES TAKE RESPONSIBILITY FOR WHAT HE'S DONE,

12   AND HE WILL ADDRESS THAT WITH THE COURT, BUT WE ARE ASKING

13   FOR A MINIMUM GUIDELINE RANGE FOR THIS ISSUE.

14        AND THE OTHER ISSUE WE HAVE, YOUR HONOR, I'M

15   JUST GOING TO BE QUITE, QUITE BLUNT, IS MY CLIENT MAY HAVE

16   OTHER ISSUES OTHER PLACES, AND SOME OF THESE FACTS IN THIS

17   CASE MAY PLAY INTO THE FACTORS IN THOSE CASES IN ANOTHER

18   STATE.  I KNOW WHAT MY CLIENT HAS BEEN SERVED WITH, AND

19   WHAT HE'S BEEN SERVED WITH IS DEALS WITH A CASE OUT OF

20   VERMONT.  THE FACT OF THE MATTER IS THAT SOMEWHAT WILL

21   COME INTO PLAY AND THAT MAY BE SOMETHING THAT THE SENTENC-

22   ING COURT IN VERMONT WILL LOOK AT; BUT, NONETHELESS, WE'RE

23   ASKING FOR A MINIMUM GUIDELINE SENTENCE, YOUR HONOR.

24        THAT'S ALL WE HAVE.

25        THE COURT:  YOU'RE TELLING ME SOMETHING THAT I

1   DIDN'T KNOW.  THERE ARE PENDING CHARGES IN VERMONT?

2            MR. STAMBAUGH:  THAT'S MY UNDERSTANDING, YOUR

3   HONOR.

4            THE COURT:  WHAT'S THE NATURE OF THOSE CHARGES?

5            MR. STAMBAUGH:  YOUR HONOR, UNDERSTAND THIS IS

6   WHAT MY CLIENT TELLS ME BECAUSE, AGAIN, I BELIEVE THESE

7   MATTERS ARE SEALED.  I BELIEVE HE'S ALREADY BEEN SERVED

8   WITH THE DOCUMENTATION, IT'S A DRUG CONSPIRACY OUT OF THE

9   STATE OF VERMONT AND MAY INVOLVE SOME OF THE SAME PEOPLE

10  WE HAVE HERE INVOLVED IN THIS DRUG CONSPIRACY, BUT IT IS

11  OUT OF FEDERAL DISTRICT COURT IN VERMONT.

12           THE COURT:  ALL RIGHT.  MR. BOWMAN, DO YOU

13  AGREE WITH MR. STAMBAUGH'S CHARACTERIZATION THAT THE

14  DEFENDANT IS NOT A MAJOR PARTICIPANT?

15           MR. BOWMAN:  YOUR HONOR, THIS IS A, THIS IS A

16  CASE WHERE WE ONLY HAD FOUR DEFENDANTS CHARGED, AND I

17  DON'T KNOW THAT WE EVER REALLY CAME TO A -- CAME TO

18  UNDERSTAND THE COMPLETE AND TOTAL INVOLVEMENT OF

19  MR. SUERO.  WE KNOW THAT HE WAS TRAVELING HERE FROM NEW

20  YORK, WE KNOW THAT HE WAS TRAVELING WITH MR. CHRISTOPHER

21  AND THAT THEY WERE DISTRIBUTING CRACK COCAINE, OF COURSE,

22  IN THE DISTRICT; THAT MS. SOUTHERLAND, WHO DID DEBRIEF,

23  INDICATED THAT SHE DISTRIBUTED CRACK COCAINE IN JOHNSON

24  CITY, AND SHE DID THAT AT THE BEHEST OF CHRISTOPHER AND

25  MR. SUERO.  SHE INDICATED THAT ON ONE OCCASION SHE

DISTRIBUTED A TOTAL OF 92 GRAMS OF CRACK ON BEHALF OF
THEM.  ON HER SECOND TRIP TO JOHNSON CITY SHE ALSO
DISTRIBUTED CRACK COCAINE TO A PERSON WHO WAS ACTING AS AN
UNDERCOVER SOURCE FOR THE THIRD -- NOT FOR THE THIRD, BUT
FOR THE SECOND JUDICIAL DISTRICT DRUG TASK FORCE; THAT SHE
STATED ON THAT OCCASION SHE DISTRIBUTED 12 MORE EIGHT
BALLS BESIDES THAT.  SHE ALSO HAD AN EIGHT BALL OF CRACK
COCAINE THAT WAS RECOVERED FROM HER BY AGENTS.

SO, SO CERTAINLY WHILE THERE WAS NO ENHANCE-
MENTS APPLIED IN THIS CASE, YOUR HONOR, WHAT WE HAVE WAS,
I THINK, CERTAINLY, YOU KNOW, AND THE GOVERNMENT OBVIOUSLY
DIDN'T OBJECT, BUT I THINK THERE CERTAINLY IS A BASIS FOR
WHICH YOU CAN FIND THAT MS. SOUTHERLAND AT THE VERY LEAST
WAS ACTING UNDER THE CONTROL AND DIRECTION OF MR. SUERO.
FROM WHAT WE SAW AND WHAT'S OUTLINED IN THE FACTUAL BASIS,
IT WOULD APPEAR THAT MR. SUERO WAS ACTING IN SOMEWHAT OF A
PARTNERSHIP CAPACITY WITH MR. CHRISTOPHER; AND THAT'S WHAT
WE KNOW, YOUR HONOR.  SO, NO, I DON'T THINK THAT MINIMAL
PARTICIPANT OR MINOR ROLE IS APPROPRIATE, AND CERTAINLY
THERE WAS NO ADJUSTMENT MADE FOR MINOR OR MINIMAL ROLE
PARTICIPANT IN THE CASE.

THE COURT:  ALL RIGHT, MR. BOWMAN, THANK YOU.

ALL RIGHT.  MR. SUERO, COME UP TO THE PODIUM,
PLEASE, WITH YOUR ATTORNEY.

I TELL YOU WHAT, I SAW MR. WOLFE COME IN.

1    LET'S GET THAT ON THE RECORD BEFORE I FORGET TO DO IT, ALL

2    RIGHT.

3            MR. WOLFE, THE QUESTION HAS ARISEN AS TO WHERE

4    YOU OBTAINED THE DOCUMENT THAT'S BEEN PROVIDED TO COUNSEL

5    AND NOW PROVIDED TO THE COURT WHICH OUTLINES MR. SUERO'S

6    YOUTHFUL OFFENDER ADJUDICATION IN NEW YORK.

7            PROBATION OFFICER WOLFE:  YES, JUDGE.  I

8    OBTAINED THE DOCUMENT FROM THE UNITED STATES PROBATION

9    OFFICE IN THE BRONX AREA.  THEY WERE UNSUCCESSFUL IN

10   OBTAINING THE DOCUMENTS STRAIGHT FROM THE CLERK'S OFFICE

11   IN THAT AREA, SO THE CRIMINAL REPOSITORY YEAR THAT I GOT

12   THE RAP SHEET FOR THAT THEY CALLED IT WAS OBTAINED FROM

13   THE UNITED STATES PROBATION OFFICE IN NEW YORK.

14           THE COURT:  IS IT YOUR UNDERSTANDING THAT THAT

15   WEBSITE LISTED AT THE BOTTOM IS WHERE THEY OBTAINED IT?

16           PROBATION OFFICER WOLFE:  THAT'S CORRECT.

17           THE COURT:  THAT'S A PORTAL, AS I UNDERSTAND

18   IT, THAT ONLY CERTAIN PEOPLE CAN ACCESS?

19           PROBATION OFFICER WOLFE:  IT'S A DATA BASE THEY

20   HAVE ACCESS TO, JUDGE, MY UNDERSTANDING, BUT I DON'T KNOW

21   AS FAR AS WHO HAS ACCESS TO IT, WHO HAS IT, WHO CAN'T; BUT

22   THEY RELY ON IT TO SUPPORT THEIR REPORTS FOR POINTS AND

23   CALCULATIONS AND THINGS SUCH AS THAT NATURE.

24           THE COURT:  DID YOU ASK MR. SUERO TO SIGN A

25   RELEASE SO --

1                    PROBATION OFFICER WOLFE:  I DID.

2                    THE COURT:  AND DID HE SIGN IT?

3                    PROBATION OFFICER WOLFE:  HE DID.

4                    THE COURT:  WHAT HAPPENED WHEN YOU SUBMITTED

5     THAT TO THE COURT?

6                    PROBATION OFFICER WOLFE:  THE CLERK'S OFFICE

7     WOULD NOT RECOGNIZE THAT IN NEW YORK.  THEY SAID THAT

8     WASN'T GOOD.  IT WAS GOING TO HAVE TO BE AN AFFIDAVIT THAT

9     WAS GOING TO BE SIGNED BY A JUDGE TO --  THEN THAT

10    DOCUMENT, THAT AFFIDAVIT WOULD BE, MY UNDERSTANDING,

11    PROVIDED TO EITHER ANOTHER JUDGE OR THE CLERK'S OFFICE, I

12    CAN'T REMEMBER EXACTLY, TO HAVE THE CASE UNSEALED.  THEY

13    WERE SHUT DOWN, THE PROBATION OFFICE WAS, AND I WAS.  THEY

14    WOULD NOT RECOGNIZE THAT SIGNED RELEASE FORM BY MR. SUERO,

15    THEY WOULDN'T JUSTIFY THAT TO UNSEAL THE CASE.

16                   THE COURT:  DID YOU DO AN NCIC RECORDS CHECK?

17                   PROBATION OFFICER WOLFE:  YES.

18                   THE COURT:  DOES IT SHOW THIS NEW YORK

19    ADJUDICATION.

20                   PROBATION OFFICER WOLFE:  JUDGE, IT'S NOT

21    REFLECTED ON THIS NCIC.

22                   THE COURT:  ALL RIGHT.  DOES ANYBODY SEE ANY

23    NEED FOR ME TO SWEAR MR. WOLFE?  CAN WE STIPULATE THAT

24    WOULD BE HIS TESTIMONY?

25                   MR. STAMBAUGH:  YES, YOUR HONOR; YES, YOUR

1    HONOR.

2              MR. BOWMAN:  YES, YOUR HONOR.  ALTHOUGH I GUESS

3    MAYBE I'M STIRRING IT, JUDGE, BUT I'M CURIOUS BASED UPON

4    THE FACT THAT IT'S NOT IN NCIC AS TO HOW MR. WOLFE CAME TO

5    LIST THAT ADJUDICATION IN THE ORIGINAL PSR.  I GUESS

6    THE -- I GUESS AM I TO UNDERSTAND THE PORTAL DOCUMENTS

7    WERE RECEIVED BEFORE THE PSR WAS PREPARED?

8              PROBATION OFFICER WOLFE:  CAN I LOOK AT THE

9    FILE AND SEE IF THERE WAS A PRETRIAL REPORT?

10             THE COURT:  YES, YOU MAY.

11             PROBATION OFFICER WOLFE:  I DON'T KNOW, TO BE

12   HONEST, MR. BOWMAN.

13             MR. BOWMAN:  I'M SORRY TO PUT YOU ON THE SPOT.

14             PROBATION OFFICER WOLFE:  NO, THAT'S FINE.

15             JUDGE, IT APPEARS THAT MR. SUERO WAS ARRESTED

16   IN THE DISTRICT OF VERMONT.

17             THE COURT:  YES.

18             PROBATION OFFICER WOLFE:  AND ON THAT PAR-

19   TICULAR REPORT CONTAINED IN THE PRETRIAL REPORT WAS THAT

20   PARTICULAR CONVICTION, SO I BELIEVE THAT'S WHAT RAISED MY

21   SUSPICION OR INQUIRY TO FURTHER DETERMINE WHAT WAS GOING

22   ON WITH THAT CONVICTION AND BASED ON THE DISTRICT OF

23   VERMONT'S INVESTIGATION, AND I CANNOT TELL YOU EXACTLY HOW

24   THEY UNCOVERED IT.

25             THE COURT:  IN THIS DISTRICT YOU USE NCIC FOR

1   THOSE REPORTS; DON'T YOU?

2           PROBATION OFFICER WOLFE:  YES, THAT'S SOMETHING

3   WE RELY ON TO GIVE US GUIDANCE FOR CONVICTIONS THAT WE MAY

4   NOT KNOW ABOUT.  NOW, YOU KNOW, NCIC IS ONLY AS GOOD AS

5   THE PERSON WHO ENTERS IT, SO I DON'T KNOW WHY IT WOULD NOT

6   BE IN THERE, BUT THE PRETRIAL REPORT FROM THE DISTRICT OF

7   VERMONT IS WHERE I OBTAINED THAT CONVICTION.

8           THE COURT:  BUT IT IS CURIOUS THAT IT DOESN'T

9   APPEAR ON THE NCIC REPORT.  IT'S EVEN MORE CURIOUS IN

10  LIGHT OF THE FACT THAT THERE APPEARS TO BE AN NCIC NUMBER

11  ON THIS OTHER DOCUMENT, THE PORTAL DOCUMENT.

12          PROBATION OFFICER WOLFE:  YOUR HONOR, I DON'T

13  KNOW OTHER THAN -- I'M SORRY, THE NCIC I HAVE DOES NOT

14  REFLECT THAT.  IN THE PRETRIAL REPORT IT CONTAINS A DOCKET

15  NUMBER AND REFERENCES THE BRONX COUNTY CRIMINAL COURT AND

16  IT WAS TRANSFERRED TO THE BRONX COUNTY SUPREME COURT; BUT,

17  I DON'T KNOW, I APOLOGIZE, I JUST DON'T HAVE AN ANSWER AS

18  TO THE QUESTION.

19          THE COURT:  THAT'S FINE.  WE HAVE WHAT WE HAVE.

20          DID WE DRAG YOU IN OUT OF THE FIELD?

21          PROBATION OFFICER WOLFE:  WELL, NO, THAT'S

22  FINE -- YEAH, I APOLOGIZE FOR THE WAY I'M DRESSED.  YEAH,

23  I WAS OUT, YES, I WAS DOING SOME WORK OUTSIDE THE COURT, I

24  APOLOGIZE.

25          THE COURT:  ALL RIGHT.  THANK YOU, MR. WOLFE.

1          PROBATION OFFICER WOLFE:  YES, SIR.

2          THE COURT:  ALL RIGHT.  NOW, MR. SUERO, COME UP

3    TO THE PODIUM WITH YOUR ATTORNEY, PLEASE.

4          IS THERE ANYTHING YOU WISH TO SAY TO THE COURT

5    THIS AFTERNOON BEFORE I IMPOSE SENTENCE IN THIS CASE?

6          THE DEFENDANT:  YES.

7          THE COURT:  ALL RIGHT.  GO AHEAD.

8          THE DEFENDANT:  ALL RIGHT.  I WANT TO APOLOGIZE

9    TO THE COMMUNITY AND TO THE COURTS.  I UNDERSTAND HOW WHAT

10   I DID WAS WRONG, AND I UNDERSTAND THE CONSEQUENCES.  I WAS

11   STARTING TO GET MY LIFE TOGETHER PRIOR TO THESE CHARGES,

12   BUT, UNFORTUNATELY, MY PAST CAUGHT UP WITH ME.  I HAVE TWO

13   BOYS, TWO YOUNG BOYS, I MISS THEM DEARLY, AND I WANT TO

14   APOLOGIZE TO THEM.  I JUST ASK THAT YOU BE LENIENT WITH

15   ME, THAT'S IT.  THANK YOU.

16         THE COURT:  ALL RIGHT.  MR. SUERO, SENTENCING

17   IS NEVER SOMETHING I LOOK FORWARD TO IN A CRIMINAL CASE,

18   AND I'VE NEVER TAKE -- I'VE NEVER LEFT THE COURTROOM AFTER

19   A CRIMINAL SENTENCING FEELING ANY KIND OF PLEASURE ABOUT

20   THE SENTENCE THAT WAS IMPOSED.  SENTENCING BECOMES PAR-

21   TICULARLY HARD WHEN I'M DEALING WITH A 23 YEAR OLD

22   DEFENDANT, AND YOU ARE THE SECOND 23 YEAR OLD DEFENDANT

23   I'VE SEEN TODAY.

24         WHAT I'M REQUIRED TO DO HERE THIS AFTERNOON IS

25   TO IMPOSE A SENTENCE WHICH IS SUFFICIENT BUT NOT GREATER

1   THAN NECESSARY.  IF YOU READ THE STATUTE, TITLE 18, UNITED

2   STATES CODE, SECTION 3553(A), CONGRESS JUST SORT OF MATTER

3   OF FACTLY LISTS A NUMBER OF FACTORS THAT THE COURT MUST

4   CONSIDER IN DETERMINING WHAT SENTENCE IS SUFFICIENT BUT

5   NOT GREATER THAN NECESSARY.

6          THE FIRST ONE IS THE ADVISORY GUIDELINE RANGE.

7   BECAUSE OF MY RULING ON YOUR OBJECTION, YOU HAVE AN

8   ADVISORY GUIDELINE RANGE OF 70 TO 87 MONTHS.  IF I HAD

9   SUSTAINED YOUR OBJECTION, YOU WOULD HAVE HAD AN ADVISORY

10  RANGE OF 63 TO 78 MONTHS, SOME OVERLAP BETWEEN THE TWO,

11  TWO RANGES.

12         NOW, I REFER TO THAT RANGE AS ADVISORY BECAUSE

13  I'M NOT REQUIRED TO SENTENCE YOU WITHIN THAT RANGE.  I

14  HAVE DISCRETION TO VARY BELOW THAT RANGE, BUT NO FURTHER

15  THAN THE MANDATORY MINIMUM SENTENCE WHICH APPLIES TO THE

16  CASE.  IN OTHER WORDS, I HAVE NO AUTHORITY TO SENTENCE YOU

17  TO ANYTHING LESS THAN 60 MONTHS, 5 YEARS.  CONGRESS HAS

18  TAKEN AWAY MY DISCRETION TO DO THAT.  ON THE OTHER HAND, I

19  HAVE THE DISCRETION TO VARY ABOVE THE GUIDELINE RANGE ALL

20  THE WAY UP TO 40 YEARS.  THE GOVERNMENT DOESN'T ARGUE FOR

21  THAT, AND, INDEED, IT DOES NOT APPEAR TO ME TO BE A FACTOR

22  HERE WHICH RAISES A SIGNIFICANT ARGUMENT THAT THERE OUGHT

23  TO BE AN ABOVE-GUIDELINE RANGE SENTENCE.

24         THIS RANGE IS IMPORTANT BECAUSE IT IS THE

25  RESULT OF NEARLY 30 YEARS OF WORK BY THE UNITED STATES

SENTENCING COMMISSION. THE SENTENCING COMMISSION HAS
ESTABLISHED THIS RANGE. IT'S DONE SO AFTER A MANDATE FROM
CONGRESS THAT IT CONSIDER ALL THE 3553(A) FACTORS.
EVERYTHING IN MY EXPERIENCE, AND MY EXPERIENCE GOES ALL
THE WAY BACK TO THE TIME WHEN THE GUIDELINES WERE FIRST
ISSUED, SUGGESTS TO ME THAT THE SENTENCING COMMISSION HAS
DONE WHAT CONGRESS TOLD IT TO, AND IT HAS IN FACT ESTAB-
LISHED GUIDELINE RANGES IN MOST CASES WHICH ARE
REPRESENTATIVE OR REFLECTIVE OF ALL THE 3553(A) FACTORS.
SO ALTHOUGH MY DISCRETION RANGES FROM A SENTENCE OF 5
YEARS AT THE BOTTOM TO A 40 YEAR TERM AT THE TOP, THAT
GUIDELINE RANGE BECAUSE IT IS GENERALLY REFLECTIVE OF THE
3553(A) FACTORS GIVES ME A STRONG SUGGESTION OF WHERE
WITHIN THE STATUTORY RANGE I SHOULD IMPOSE SENTENCE. IN
OTHER WORDS, WHERE WITHIN THE STATUTORY RANGE A SENTENCE
SUFFICIENT BUT NOT GREATER THAN NECESSARY CAN BE FOUND.

THE ONLY OBJECTION THAT'S BEEN RAISED IN CASES
INVOLVING CRACK COCAINE IS THAT THE GUIDELINE RANGE
REFLECTS SOME DISPARITY BETWEEN THE TREATMENT OF POWDER
COCAINE UNDER THE GUIDELINES AND THE TREATMENT OF CRACK
COCAINE, AND THAT'S TRUE. AT ONE TIME THERE WAS A 100 TO
1 RATIO, IN OTHER WORDS, CRACK COCAINE OFFENSES WERE
TREATED 100 TIMES MORE HARSHLY THAN WERE POWDER COCAINE
OFFENSES. THAT DISPARITY IS LARGELY GONE AT THIS POINT
BECAUSE JUST A FEW YEARS AGO CONGRESS TOOK ACTION; BUT

1   CONGRESS DIDN'T MAKE THE RATIO 1 TO 1, THERE'S STILL SOME

2   DISPARITY THERE, I BELIEVE IT'S BEEN 18 TO 1; AND THERE'S

3   STILL AN ARGUMENT THAT SOMETIMES IS MADE THAT THAT

4   DISPARITY CARRIES OVER INTO THE GUIDELINES AND MAKES THE

5   GUIDELINES AN UNRELIABLE INDICATOR OF WHAT SENTENCE IS

6   SUFFICIENT BUT NOT GREATER THAN NECESSARY, BUT I GENERALLY

7   HAVE NOT ACCEPTED THAT ARGUMENT SIMPLY BECAUSE IT'S ONLY

8   BEEN NOW A VERY FEW YEARS SINCE CONGRESS WEIGHED IN ON THE

9   ISSUE.  CONGRESS AT THAT TIME FELT THAT THE 18 TO 1 RATIO

10  WAS APPROPRIATE.  INDEED, IT WAS SUGGESTED THAT THERE WERE

11  SOME VALID SUBSTANTIVE REASONS FOR THAT DISPARITY.  FOR

12  WHATEVER REASON THE STATISTICS INDICATE THAT FIREARMS ARE

13  MORE OFTEN POSSESSED BY CRACK COCAINE DEALERS THAN BY

14  POWDER COCAINE DEALERS.  I'M NOT SURE WHY THAT STATISTIC

15  EXISTS, BUT IT DOES; AND SOME PEOPLE STILL SUGGEST THAT

16  CRACK COCAINE IS MORE HIGHLY ADDICTIVE THAN POWDER

17  COCAINE.  I DON'T KNOW WHAT THE SCIENCE SHOWS IN THAT

18  RESPECT.  I DO KNOW THAT I HAVE SEEN MANY, MANY DEFENDANTS

19  OVER THE YEARS WHO HAVE STOOD THERE BEHIND THAT PODIUM AND

20  TOLD ME THAT AFTER THEY USED CRACK COCAINE ONE TIME, THEY

21  WERE JUST SIMPLY HOOKED.

22           NOW, YOU DIDN'T REPORT THE USE OF ANY CRACK

23  COCAINE.  IN FACT, THE ONLY THING YOU REPORTED WAS SOME

24  USE OF MARIJUANA.

25           THE DEFENDANT:  YES.

1    THE COURT:  IT DOESN'T APPEAR THAT YOU WERE A

2  REGULAR MARIJUANA USER NECESSARILY, BUT YOU CERTAINLY HAD

3  USED MARIJUANA FROM THE TIME YOU WERE 16.

4    THE DEFENDANT:  YES.

5    THE COURT:  SO I BASICALLY, AND GENERALLY

6  SPEAKING, DON'T FIND THE EXISTING DISPARITY BETWEEN THE

7  TREATMENT OF CRACK COCAINE AND POWDER COCAINE TO REFLECT

8  SOME INADEQUACY IN THE GUIDELINE RANGE FOR THE REASONS --

9  FOR THE REASON THAT CONGRESS ESTABLISHED THAT RATIO VERY

10  RECENTLY AND BECAUSE THERE ARE AT LEAST ANECDOTALLY

11  REASONS WHY THERE SHOULD IN FACT BE SOME DISPARITY IN

12  TREATMENT, BUT, GENERALLY SPEAKING, THE RANGE IS

13  REFLECTIVE OF THE OTHER 3553(A) FACTORS; BUT BECAUSE IT'S

14  ADVISORY, I HAVE TO CONSIDER THESE OTHER FACTORS, CONSIDER

15  WHETHER THERE'S ONE OR MORE OF THESE FACTORS OR SEVERAL IN

16  COMBINATION THAT ARE NOT REFLECTED IN THE GUIDELINE RANGE.

17    I BEGIN BY LOOKING TO, FIRST OF ALL, THE

18  SERIOUSNESS OF THE OFFENSE.  WHETHER I CONSIDER YOU A

19  MAJOR PARTICIPANT OR NOT A MAJOR PARTICIPANT IN THIS

20  CONSPIRACY, THE SIMPLE FACT OF THE MATTER REMAINS THAT A

21  CONSPIRACY TO DISTRIBUTE CRACK COCAINE IS SERIOUS BECAUSE

22  WHETHER IT'S MORE ADDICTIVE THAN POWDER COCAINE OR NOT, IT

23  IS CLEARLY AN ADDICTIVE SUBSTANCE.  IT'S A DANGEROUS

24  SUBSTANCE.  IT WRECKS FAMILIES, IT WRECKS LIVES, IT WRECKS

25  COMMUNITIES, AND SO IT'S A SERIOUS OFFENSE.  AND WHETHER,

1    AGAIN, WHETHER I FIND THAT YOU ARE A MAJOR OR NOT A MAJOR

2    PARTICIPANT, IT'S CLEAR THAT YOUR PARTICIPATION HERE WAS

3    SUBSTANTIAL.  THAT'S PROBABLY THE BEST WORD I CAN USE FOR

4    IT.

5              AND YOU MIGHT, AS MR. BOWMAN SUGGESTED, IF YOU

6    HAD TAKEN THIS CASE TO TRIAL, HAVE BEEN CONVICTED OF A

7    CONSPIRACY INVOLVING 280 GRAMS OF CRACK COCAINE, WHICH

8    WOULD HAVE MADE YOU SUBJECT TO THE 10 YEAR MANDATORY

9    MINIMUM.  SO IN SOME WAYS YOU HAVE RECEIVED SIGNIFICANT

10   BENEFIT HERE BY THE GOVERNMENT'S AGREEMENT TO ALLOW YOU TO

11   PLEAD GUILTY TO A LESSER INCLUDED OFFENSE; BUT IT'S A

12   SERIOUS OFFENSE, IT'S A DANGEROUS OFFENSE.

13             I HAVE TO ALSO LOOK AT THE NEED FOR THE

14   SENTENCE IMPOSED TO PROMOTE RESPECT FOR THE LAW.

15   MR. SUERO, I AM BOTHERED CONSIDERABLY BY YOUR CRIMINAL

16   HISTORY HERE.  I HEARD YOU SAY THAT PRIOR TO THE COM-

17   MISSION OF THIS OFFENSE YOU WERE TRYING TO GET YOUR LIFE

18   BACK ON TRACK, GET YOUR LIFE TOGETHER, AND I HOPE YOU CAN

19   ULTIMATELY DO THAT; BUT THE SIMPLE FACT OF THE MATTER IS

20   THAT YOUR CRIMINAL RECORD FOR A VERY YOUNG MAN IS, IS VERY

21   SIGNIFICANT, BEGINNING WITH A FIRST DEGREE ROBBERY WHEN

22   YOU WERE 15 YEARS OF AGE.  THAT'S THE CONVICTION WE'VE

23   BEEN TALKING ABOUT HERE FOR A GOOD PART OF THE AFTERNOON,

24   WHICH APPARENTLY, ACCORDING TO THE PRESENTENCE REPORT

25   INVOLVING, INVOLVED AN INCIDENT WHERE YOU STRUCK THE

1  VICTIM IN THE FACE WITH THE BARREL OF A PISTOL.  THEN, OF

2  COURSE, THERE WAS THE AGGRAVATED HARASSMENT OF AN EMPLOYEE

3  CONVICTION THAT APPARENTLY OCCURRED WHILE YOU WERE IN THE

4  JUVENILE FACILITY; AND THEN YOUR FIRST ADULT CONVICTION AT

5  THE AGE OF 18, WHICH INVOLVED ULTIMATELY DISORDERLY

6  CONDUCT CHARGED WITH RESISTING ARREST AND SECOND DEGREE

7  HARASSMENT, THOSE CHARGES DISMISSED, BUT FOUND GUILTY OF

8  DISORDERLY CONDUCT.  AND THE EXPLANATION OF THAT CHARGE

9  INDICATES THAT YOU WERE -- THAT AN OFFICER ATTEMPTED TO

10  ARREST YOU, AND THAT YOU DID IN FACT RESIST THAT ARREST,

11  PUSHED THE OFFICER IN THE CHEST, REFUSED TO ENTER YOUR

12  CELL, FLAILED ARMS, KICKED LEGS, TWISTED BODY, REFUSING TO

13  HANDCUFFED AND SO ON.  THEN AT AGE 20 CONVICTED OF

14  POSSESSION OF A RIFLE OR SHOTGUN IN PUBLIC, RESISTING

15  ARREST, OF KILLING OR INJURING A POLICE DOG AND A FALSE

16  IMPERSONATION; AND THEN IN THAT SAME YEAR, JUST TWO MONTHS

17  LATER, CONVICTED OF CRIMINAL TRESPASSING AND ESCAPE THIRD

18  DEGREE WITH ANOTHER ASSAULT CHARGE DISMISSED AS WELL AS

19  ANOTHER RESISTING ARREST CHARGE -- WELL, LET ME BACK UP.

20  I SAID THAT WRONG.  YOUR CONVICTIONS WERE FOR CRIMINAL

21  TRESPASSING AND RESISTING ARREST.  THE ESCAPE WAS DIS-

22  MISSED ALONG WITH THE CRIMINAL MISCHIEF AND THIRD DEGREE

23  ASSAULT.  AND THEN, OF COURSE, THE COMMISSION OF THIS

24  OFFENSE, A RATHER DISTURBING, SOMEWHAT PROFOUND RECORD FOR

25  A MAN YOUR AGE.

1        I CAN'T HELP BUT AGREE WITH THE GOVERNMENT'S

2    CHARACTERIZATION THAT YOUR CRIMINAL HISTORY IS IN FACT A

3    VIOLENT HISTORY.  THIS CAN'T CONTINUE, MR. SUERO.  I MEAN,

4    IF THIS KIND OF CONDUCT DOES CONTINUE, YOU'RE GOING TO END

5    UP IN PRISON FOR A LONG, LONG TIME, OR YOU'RE GOING TO BE

6    KILLED DURING ONE OF THESE ALTERCATIONS.  AND THAT RECORD

7    DOES IN FACT SUGGEST TO ME THAT THERE IS A RATHER SERIOUS

8    NEED HERE FOR THE COURT TO IMPOSE A SENTENCE THAT WILL

9    PROMOTE RESPECT FOR THE LAW.

10       THAT ALSO IMPLICATES THE NEED TO PROTECT THE

11   PUBLIC HERE.  EVERY OFFENSE THAT YOU HAVE COMMITTED HAS

12   HAD AN ELEMENT OF VIOLENCE OR SERIOUS RISK TO THE

13   COMMUNITY.  THE PUBLIC HAS A RIGHT TO BE PROTECTED FROM

14   THAT.  MR. SUERO, WHILE YOU'RE A YOUNG MAN, THIS KIND OF

15   CONDUCT IS JUST NOT GOING TO BE TOLERATED WHETHER IT

16   OCCURS IN TENNESSEE OR NEW YORK OR SOME OTHER STATE.  THE

17   PUBLIC HAS A RIGHT TO BE PROTECTED FROM THAT.

18       I ALSO HAVE TO CONSIDER HERE THE NEED FOR AN

19   ADEQUATE DETERRENCE.  I CONSIDER BOTH GENERAL DETERRENCE

20   AND SPECIFIC DETERRENCE.  THE FIRST QUESTION BEING WHAT

21   SENTENCE IS NECESSARY TO DETER YOU FROM FURTHER CRIMINAL

22   CONDUCT.  GIVEN A CRIMINAL RECORD THAT GOES BACK TO THE

23   AGE OF 15 AND THAT HAS IN SOME WAYS ESCALATED OVER THE

24   LAST FEW YEARS, THERE CERTAINLY IS A NEED TO SPECIFICALLY

25   DETER YOU FROM FURTHER CRIMINAL CONDUCT.  I'VE HEARD YOUR

1   PLEA FOR LENIENCY HERE, BUT, UNFORTUNATELY, IN SOME CASES

2   A LENIENT SENTENCE SENDS JUST THE OPPOSITE MESSAGE.  YOU

3   KNOW, I'M BIG ON SECOND CHANCES, I CERTAINLY AM BIG ON

4   GIVING YOUTHFUL OFFENDERS A BREAK.  I'M CONCERNED, HOW-

5   EVER, THAT THAT'S HAPPENED SEVERAL TIMES IN YOUR YOUNG

6   LIFE ALREADY AND THAT THERE HAS TO BE A SIGNIFICANT

7   SENTENCE HERE TO DETER YOU SPECIFICALLY.

8          GENERAL DETERRENCE CLEARLY IS A FACTOR HERE.  I

9   DON'T KNOW HOW MANY OF THESE CASES I'VE NOW DEALT WITH

10  WHERE CRACK COCAINE WAS INTRODUCED INTO THIS DISTRICT FROM

11  NEW YORK AND SOLD HERE AND DISTRIBUTED HERE IN THIS

12  DISTRICT.  I'VE HAD SEVERAL CASES WHERE PEOPLE HAVE SUG-

13  GESTED TO ME THAT IT SELLS FOR A MUCH LOWER PRICE IN NEW

14  YORK CITY, IT SELLS FOR A MUCH LOWER PRICE IN PLACES LIKE

15  ATLANTA, AND THEN BECAUSE IT SELLS AT A HIGHER PRICE IN

16  THE EASTERN DISTRICT OF TENNESSEE MAKES THIS DISTRICT AN

17  ATTRACTIVE PLACE FOR PEOPLE TO BRING CRACK COCAINE.  SO

18  IT'S CLEAR TO ME THAT THERE HAS TO BE A GENERAL DETERRENT

19  EFFECT HERE.

20          BEYOND THAT, I HAVE TO LOOK AT THE NATURE AND

21  CIRCUMSTANCES OF YOUR INVOLVEMENT IN THIS OFFENSE.

22  CLEARLY YOU WERE NEITHER THE MOST CULPABLE NOR THE LEAST

23  CULPABLE IN THIS CONSPIRACY.  YOU WERE NOT A MINOR OR A

24  MINIMAL PARTICIPANT.  YOUR PARTICIPATION WAS IN FACT

25  SIGNIFICANT, AS I JUST SAID.

1           THAT LEAVES ME TO CONSIDER YOUR PERSONAL

2      HISTORY AND CHARACTERISTICS.  I'VE TALKED ABOUT YOUR

3      CRIMINAL HISTORY HERE.  I'VE TALKED A LITTLE BIT ABOUT

4      YOUR AGE, AND, FRANKLY, IT'S DISTURBING TO ME ANY TIME I

5      SEE A YOUNG DEFENDANT, ESPECIALLY ONE IN HIS EARLY

6      TWENTIES, AND CERTAINLY I AM GENERALLY OPEN TO THE IDEA

7      THAT VERY YOUTHFUL OFFENDERS OUGHT TO GET ANOTHER CHANCE.

8      THE PROBLEM HERE IS, MR. SUERO, YOU'VE TAKEN ADVANTAGE OF

9      THAT MORE THAN ONE TIME.  I MEAN, IT WAS AFTER ALL A

10     YOUTHFUL OFFENDER ADJUDICATION ON THAT ROBBERY CONVICTION.

11     YOU SIMPLY CAN'T CONTINUE TO COMMIT THESE CRIMES, NO

12     MATTER WHAT YOUR AGE; BUT, NEVERTHELESS, I NOTE YOUR YOUNG

13     AGE.

14           AND I NOTE THE FACT THAT YOU HAVE THESE TWO

15     YOUNG CHILDREN, ONE THREE YEARS OLD, ONE THREE MONTHS OLD,

16     AS OF THE TIME THE PRESENTENCE REPORT WAS PREPARED, BUT

17     VERY YOUNG CHILDREN.  YOU'VE TOLD ME THAT YOU MISS THOSE

18     CHILDREN EARLY, I DON'T DOUBT THAT A BIT.  AT AGE 23 WITH

19     TWO CHILDREN, YOU OUGHT TO BE WITH THOSE CHILDREN, AND YOU

20     OUGHT TO BE SETTING A GOOD EXAMPLE FOR THOSE CHILDREN.

21     THOSE CHILDREN ARE IN MANY WAYS VICTIMS HERE, MR. SUERO.

22     THEY'VE BEEN VICTIMIZED BY YOUR CONDUCT.  THEY'RE NOT

23     GOING TO HAVE A DAY-TO-DAY RELATIONSHIP WITH THEIR FATHER

24     FOR AT LEAST 5 YEARS BECAUSE OF THE DECISIONS THAT YOU

25     HAVE MADE.

1            I SUPPOSE WHEN YOUR PRISON SENTENCE IS COM-

2   PLETED HERE, YOU'VE GOT SOME MAKING UP TO DO WITH THOSE

3   CHILDREN; AND THE BEST THING YOU CAN DO FOR THEM,

4   MR. SUERO, IS TO GIVE THEM A PROPER EXAMPLE, TEACH THEM

5   HOW TO BE YOUNG MEN AND ADULT MEN WHO ARE PRODUCTIVE PARTS

6   OF SOCIETY; NOT DEALING DRUGS, NOT COMMITTING VIOLENT

7   OFFENSES, NOT RESISTING AUTHORITY AND RESISTING POLICE.

8   THE SILVER LINING IS THAT YOU'VE GOT SOME TIME TO DO THAT.

9   DURING THE TIME THAT YOU'RE ABSENT, YOU NEED TO TEACH

10  THESE CHILDREN -- THE OLDER ONE IS SOON GOING TO BE ASKING

11  QUESTIONS, IF HE'S NOT ALREADY, ABOUT WHERE HIS FATHER IS

12  AND WHY HE'S WHERE HE IS, AND YOU HAVE TO BE VERY CAREFUL

13  ABOUT ANSWERING THOSE QUESTIONS; BUT YOU NEED TO MAKE THAT

14  YOUNG MAN UNDERSTAND, AND YOU NEED TO MAKE THE YOUNGER ONE

15  UNDERSTAND WHEN HE STARTS ASKING THOSE QUESTIONS TOO, THAT

16  IF YOU MAKE THESE BAD CHOICES IN LIFE, THERE ARE BAD

17  CONSEQUENCES.

18            AND I'LL TELL YOU SOMETHING, MR. SUERO, YOU CAN

19  TELL THEM ALL YOU WANT TO ABOUT MAKING BAD DECISIONS; BUT

20  IF YOU CONTINUE TO MAKE THOSE BAD DECISIONS YOURSELF, THE

21  ODDS ARE THEY WILL BEGIN TO MAKE THOSE BAD DECISIONS AS

22  WELL.  YOU KNOW, SOMETIMES ADULTS HAVE A HABIT OF TELLING

23  CHILDREN TO DO AS THEY SAY, NOT AS THEY DO, AND THAT'S THE

24  MOST NONSENSICAL THING I'VE EVER HEARD BECAUSE THEY'LL DO

25  JUST EXACTLY WHAT THEIR PARENTS DO.  THEY WILL MIMIC YOUR

1    BEHAVIOR. AND I'M VERY SYMPATHETIC TO THE PLIGHT OF THESE

2    CHILDREN AT THIS POINT, BUT I'M ALSO MINDFUL OF THE FACT

3    THAT NEITHER THE GOVERNMENT NOR THE COURT PUTS THOSE

4    CHILDREN IN THAT POSITION.

5              WHAT I HAVE TO DO, MR. SUERO, IS TAKE ALL THAT

6    AND BALANCE THOSE FACTORS ONE AGAINST ANOTHER AND DETER-

7    MINE THEN WHAT SENTENCE IS SUFFICIENT BUT NOT GREATER THAN

8    NECESSARY. MR. BOWMAN ASKS ME TO SENTENCE IN THE UPPER

9    HALF OF THE GUIDELINE RANGE, AND CERTAINLY THE GOVERNMENT

10   HAS A LEGITIMATE ARGUMENT ABOUT THAT GIVEN YOUR VIOLENT

11   HISTORY, GIVEN THE BENEFITS YOU'VE ALREADY GOTTEN FROM

12   THIS PLEA AGREEMENT, GIVEN THE BENEFIT THAT YOU'D GOTTEN

13   PREVIOUSLY BASED ON YOUR YOUTHFUL STATUS. MR. STAMBAUGH

14   ASKS ME TO CONSIDER A SENTENCE AT THE BOTTOM OF THE

15   GUIDELINE RANGE BECAUSE YOU'RE A YOUNG MAN, BECAUSE THERE

16   ARE TWO MINOR CHILDREN; AND I GUESS IMPLICIT IN WHAT HE'S

17   TOLD ME IS THAT BECAUSE YOU'RE A CITIZEN OF THE DOMINICAN

18   REPUBLIC, YOU COULD FACE DEPORTATION EVENTUALLY IF YOU

19   CONTINUE. I DON'T THINK THERE IS AN ICE DETAINER HERE. I

20   DON'T KNOW WHAT YOUR STATUS IS IN THIS COUNTRY, BUT YOU

21   CERTAINLY BY COMMITTING FELONY OFFENSES RISK BEING

22   DEPORTED FROM THE COUNTRY. AND THAT IS, OF COURSE, A

23   COLLATERAL CONSEQUENCE OF YOUR CONVICTION IN THIS CASE,

24   AND MAYBE OTHER CASES AS WELL; BUT I THINK ALL OF THOSE

25   ADULT CASES WERE PROBABLY MISDEMEANOR CASES.

1      FIRST OF ALL, MR. SUERO, I FIND THAT NEITHER A

2   SENTENCE AT THE BOTTOM OF THE GUIDELINE RANGE NOR THE TOP

3   OF THE GUIDELINE RANGE IS APPROPRIATE IN THIS CASE BECAUSE

4   YOU ARE A REPEAT OFFENDER.  BECAUSE YOU HAVE COMMITTED

5   VIOLENT OFFENSES, BECAUSE THE OFFENSE COMMITTED HERE IS A

6   SERIOUS OFFENSE, BECAUSE OF THE NEED FOR BOTH SPECIFIC AND

7   GENERAL DETERRENCE, A BOTTOM OF THE GUIDELINE RANGE

8   SENTENCE SIMPLY WOULD NOT BE APPROPRIATE HERE.

9      WE SPENT A LOT OF TIME THIS AFTERNOON ON THIS

10  ISSUE OF WHETHER OR NOT THAT NEW YORK ADJUDICATION, YOUTH-

11  FUL OFFENDER ADJUDICATION, OUGHT TO RESULT IN CRIMINAL

12  HISTORY POINTS.  IF I HAD SUSTAINED YOUR OBJECTION, AS I

13  SAID EARLIER, YOU WOULD HAVE BECOME A CRIMINAL HISTORY

14  CATEGORY 2 WITH A GUIDELINE RANGE OF 63 TO 78 MONTHS.

15      WHAT I'M GOING TO DO HERE, MR. SUERO, IS IMPOSE

16  A SENTENCE OF 78 MONTHS BECAUSE I FIND THAT THAT IS THE

17  SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY

18  IN THIS CASE, AND I FIND THAT REGARDLESS OF WHAT YOUR

19  CRIMINAL HISTORY CATEGORY WOULD HAVE BEEN.  IT'S A

20  SENTENCE THAT WOULD HAVE BEEN AT THE TOP OF THE OTHERWISE

21  APPLICABLE GUIDELINE RANGE, IT'S IN THE MIDDLE OF THE ONE

22  I FOUND APPLIED, SO IT'S IN EITHER GUIDELINE RANGE.  AND

23  EVEN IF I GOT THE GUIDELINE RANGE HERE WRONG, I FIND THAT

24  THAT 78 MONTH SENTENCE IS SUFFICIENT BUT NOT GREATER THAN

25  NECESSARY AND CLEARLY WARRANTED BY THE CIRCUMSTANCES IN

1    THIS CASE.

2              CERTAINLY I WOULD NOT BE REVERSED IF I HAD GONE

3    FURTHER NEAR THE TOP OF THE 70 TO 87 MONTH GUIDELINE

4    RANGE; BUT I WANT TO GIVE YOU THE BENEFIT OF THE DOUBT,

5    AND I DO THAT LARGELY BECAUSE OF YOUR AGE.  PLEASE UNDER-

6    STAND, MR. SUERO, HOWEVER, THAT YOU CANNOT CONTINUE TO

7    RELY ON YOUR AGE AS A MITIGATING FACTOR.  THERE'S JUST TOO

8    MANY CRIMINAL CONVICTIONS HERE NOW.  NOR CAN YOU RELY ON

9    THE FACT THAT YOU WERE A DISADVANTAGED YOUTH.  I'VE NEVER

10   QUITE UNDERSTOOD THE ARGUMENT THAT BEING A DISADVANTAGED

11   YOUTH CAUSES ONE TO MAKE BAD DECISIONS.  YOU HAVE AN

12   INHERENT SENSE OF WHAT IS RIGHT AND WHAT IS WRONG.  YOUR

13   BACKGROUND DOESN'T CHANGE THAT.  YOU KNOW WHEN YOU COMMIT

14   A ROBBERY OR AN ASSAULT OR RESIST AN OFFICER OR DISTRIBUTE

15   DRUGS THAT THOSE ARE ALL WRONG.

16             I'LL TELL YOU ONE OTHER THING, MR. SUERO, I GOT

17   THIS LETTER FROM YOUR FIANCEE.  SHE TELLS ME THAT SHE

18   WANTS TO MARRY YOU, THAT YOU HAVE BROUGHT ABOUT A CHANGE

19   IN HER LIFE.  I HOPE THAT'S CORRECT.  I'M NOT SURE QUITE

20   HOW THAT HAS OCCURRED, BUT, NEVERTHELESS, SHE APPEARS TO

21   BE PREPARED TO STAND BY YOU.  TIME WILL TELL, I GUESS.

22   AND I HOPE ALL OF THIS IS NOT SHOW FOR SOME REALITY

23   TELEVISION SHOW; BUT I'VE READ HER LETTER, WHICH WAS JUST

24   RECEIVED, AND IF WHAT SHE TELLS ME IS TRUE, AND IF SHE IN

25   FACT IS WILLING TO WAIT FOR YOU TO CONTINUE THE, THE

RELATIONSHIP, THEN THAT BRINGS SOME, SOME DEGREE OF
STABILITY INTO YOUR LIFE THAT'S OTHERWISE NOT THERE.

SO, MR. SUERO, AFTER HAVING CONSIDERED THE
NATURE AND CIRCUMSTANCES OF THIS OFFENSE, YOUR HISTORY AND
CHARACTERISTICS, THE ADVISORY GUIDELINE RANGE WHICH
APPLIES TO THIS CASE, AS WELL AS ALL THE OTHER FACTORS
LISTED IN TITLE 18, UNITED STATES CODE, SECTION 3553(A),
IT IS PURSUANT TO THE SENTENCING REFORM ACT OF 1984 THE
JUDGMENT OF THIS COURT THAT ON COUNT 1 OF THE INDICTMENT
THE DEFENDANT, MAXWELL SUERO, IS HEREBY COMMITTED TO THE
CUSTODY OF THE BUREAU OF PRISONS TO BE IN PRISON FOR A
TERM OF 78 MONTHS.

I WILL RECOMMEND THAT YOU RECEIVE 500 HOURS OF
SUBSTANCE ABUSE TREATMENT FROM THE BOP INSTITUTION
RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM.

NOW, MR. SUERO, LET ME TELL YOU SOMETHING ABOUT
THAT PROGRAM.  IT'S A VERY GOOD INTENSIVE DRUG TREATMENT
PROGRAM.  BASED ON WHAT'S IN THE PRESENTENCE REPORT,
HOWEVER, I DOUBT IF THEY'RE GOING TO FIND THAT YOU'RE
QUALIFIED FOR IT.  WHENEVER YOU HAVE AN OPPORTUNITY TO
TALK TO A COUNSELOR IN THE BUREAU OF PRISONS, YOU NEED TO
BE ABSOLUTELY CANDID AND FRANK ABOUT YOUR PRIOR DRUG USE.
I SUSPECT YOUR DRUG USE IS MORE EXTENSIVE THAN YOU HAVE
REPORTED TO THE PROBATION OFFICER, AND YOU'RE NODDING YOUR
HEAD IN AGREEMENT.  YOU NEED TO BE TRUTHFUL AND CANDID

1   WITH THAT COUNSELOR BECAUSE IF YOU NEED DRUG TREATMENT,

2   AND YOU HAVE REQUESTED DRUG TREATMENT, THEN YOU GOT TO

3   COME CLEAN, AND SO I WOULD URGE YOU TO DO THAT WITH THE

4   COUNSELOR AT THE BUREAU OF PRISONS.  OTHERWISE, I THINK

5   THEY'RE GOING TO SAY YOU'RE NOT -- YOU DON'T HAVE THE

6   HISTORY THAT JUSTIFIES YOUR PARTICIPATION IN THE PROGRAM,

7   AND IT SEEMS TO ME THAT YOU NEED TO PARTICIPATE IN THAT

8   PROGRAM; AND IT RESULTS AS WELL IN SOME BENEFITS TO YOU.

9   CONGRESS IS TALKING ABOUT EVEN GREATER BENEFITS.  I DON'T

10  KNOW WHERE THAT BILL IS EXACTLY OR WHETHER IT'S EVER GOING

11  TO PASS OR NOT, BUT CERTAINLY THEY'RE TALKING ABOUT SOME

12  OTHER THINGS.

13          AND YOU ALSO CAN RECEIVE SOME BENEFIT FROM

14  BEHAVING YOURSELF WHILE IN THE CUSTODY OF THE BUREAU OF

15  PRISONS.  YOU'VE SHOWN A PROPENSITY HERE FOR RESISTING

16  AUTHORITY.  IF YOU DO THE SAME THING WHILE IN THE BOP

17  CUSTODY, IF YOU RESIST THE AUTHORITY OF BOP PERSONNEL, YOU

18  WILL EVENTUALLY LOSE ALL OF YOUR GOOD TIME CREDIT.  THAT'S

19  WHAT THEY DO IN THE BUREAU OF PRISONS.  THEY MIGHT

20  SEGREGATE YOU, THEY MIGHT DO SOME OTHER THINGS THAT ARE

21  PUNITIVE, BUT WHAT THEY'LL CERTAINLY DO IS TAKE AWAY GOOD

22  TIME CREDIT THAT YOU COULD OTHERWISE EARN.  SO I HOPE ONE

23  THING YOU HAVE LEARNED FROM THIS IS SOME RESPECT FOR

24  AUTHORITY.

25          I WILL ALSO RECOMMEND THAT YOU BE AFFORDED A

1   FULL RANGE OF EDUCATIONAL AND/OR VOCATIONAL PROGRAMS WHICH

2   ARE OFFERED BY THE BUREAU OF PRISONS.

3          I WILL FURTHER RECOMMEND TO THE BUREAU OF

4   PRISONS THAT YOU RECEIVE CREDIT FOR ALL TIME SERVED SINCE

5   YOUR ARREST AND DETENTION ON FEBRUARY 9, 2015, AND I WILL

6   RECOMMEND THAT YOU BE DESIGNATED TO A FACILITY IN THE

7   NORTHEAST.

8          WOULD YOU PREFER TO BE CLOSE TO NEW YORK OR IN

9   NEW YORK?

10          THE DEFENDANT:  NEW JERSEY.

11          THE COURT:  NEW JERSEY.

12          THE DEFENDANT:  FORT DIX, NEW JERSEY.

13          THE COURT:  FORT DIX, NEW JERSEY.  ALL RIGHT,

14   I'LL RECOMMEND TO THE BUREAU OF PRISONS YOU BE DESIGNATED

15   TO FORT DIX, NEW JERSEY TO SERVE THIS SENTENCE.

16          UPON YOUR RELEASE FROM IMPRISONMENT YOU SHALL

17   BE ON SUPERVISED RELEASE FOR A TERM OF 4 YEARS.

18          WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF

19   THE BUREAU OF PRISONS YOU SHALL REPORT TO THE PROBATION

20   OFFICE IN THE DISTRICT TO WHICH YOU ARE RELEASED.

21          WHILE ON SUPERVISED RELEASE YOU SHALL NOT

22   COMMIT ANOTHER FEDERAL, STATE OR LOCAL CRIME.  YOU SHALL

23   COMPLY WITH THE STANDARD CONDITIONS THAT BE ADOPTED BY

24   THIS COURT IN LOCAL RULE 83.10, AND YOU SHALL NOT

25   ILLEGALLY POSSESS A CONTROLLED SUBSTANCE.  YOU SHALL NOT

1    POSSESS A FIREARM, ANY AMMUNITION, A DESTRUCTIVE DEVICE OR

2    ANY OTHER DANGEROUS WEAPON.  YOU SHALL COOPERATE IN THE

3    COLLECTION OF DNA AS DIRECTED.

4              IN ADDITION, YOU SHALL COMPLY WITH THE FOLLOW-

5    ING SPECIAL CONDITIONS:  FIRST, YOU SHALL PARTICIPATE IN A

6    PROGRAM OF TESTING AND/OR TREATMENT FOR DRUG AND/OR

7    ALCOHOL ABUSE AS DIRECTED BY THE PROBATION OFFICER UNTIL

8    SUCH TIME AS YOU ARE RELEASED FROM THE PROGRAM BY THE

9    PROBATION OFFICER; AND, SECOND, YOU SHALL SUBMIT YOUR

10   PERSON, PROPERTY, HOUSE, RESIDENCE, VEHICLES, PAPERS OR

11   OFFICE TO A SEARCH CONDUCTED BY A UNITED STATES PROBATION

12   OFFICER OR DESIGNEE.  FAILURE TO SUBMIT TO A SEARCH MAY BE

13   GROUNDS FOR REVOCATION OF RELEASE.  YOU SHALL WARN ANY

14   OTHER OCCUPANTS THAT THE PREMISES MAY BE SUBJECT TO

15   SEARCHES PURSUANT TO THIS CONDITION.  AN OFFICER MAY

16   CONDUCT A SEARCH PURSUANT TO THIS CONDITION ONLY WHEN

17   REASONABLE SUSPICION EXISTS THAT YOU HAVE VIOLATED A

18   CONDITION OF YOUR SUPERVISION AND THAT THE AREAS TO BE

19   SEARCHED CONTAIN EVIDENCE OF THE VIOLATION.  ANY SEARCH

20   MUST BE CONDUCTED AT A REASONABLE TIME AND IN A REASONABLE

21   MANNER.

22             IT IS FURTHER ORDERED THAT YOU SHALL PAY TO THE

23   UNITED STATES A SPECIAL ASSESSMENT OF $100 PURSUANT TO

24   TITLE 18, UNITED STATES CODE, SECTION 3013, WHICH SHALL BE

25   DUE IMMEDIATELY.

1            I FIND BASED UPON THIS RECORD THAT YOU DO NOT

2    HAVE THE ABILITY TO PAY A FINE, THE COURT WILL, THEREFORE,

3    WAIVE THE FINE IN THIS CASE.

4            THE COURT HAS REVIEWED YOUR PLEA AGREEMENT IN

5    THE CASE.  THAT PLEA AGREEMENT IS NOW ACCEPTED BY THE

6    COURT.  PURSUANT TO THE PLEA AGREEMENT AND UPON MOTION OF

7    THE UNITED STATES, THE REMAINING COUNTS OF INDICTMENT ARE

8    DISMISSED AS TO YOU.

9            TITLE 18, UNITED STATES CODE, SECTIONS 3565(B)

10   AND 3583(G) REQUIRE MANDATORY REVOCATION OF SUPERVISED

11   RELEASE FOR POSSESSION OF A CONTROLLED SUBSTANCE OR A

12   FIREARM OR FOR REFUSAL TO COMPLY WITH DRUG TESTING.

13           PURSUANT TO RULE 32 OF THE FEDERAL RULES OF

14   CRIMINAL PROCEDURE, THE COURT ADVISES YOU THAT YOU MAY

15   HAVE THE RIGHT TO APPEAL YOUR CONVICTION OR THE SENTENCE

16   IMPOSED IN THE CASE.  A NOTICE OF APPEAL MUST BE FILED

17   WITHIN 14 DAYS OF THE JUDGMENT.  IF YOU REQUEST AND SO

18   DESIRE, THE CLERK OF THE COURT CAN PREPARE AND FILE A

19   NOTICE OF APPEAL FOR YOU.

20           DOES EITHER PARTY HAVE ANY OBJECTION TO THE

21   SENTENCE JUST PRONOUNCED THAT'S NOT BEEN PREVIOUSLY

22   RAISED?

23           MR. BOWMAN:  NO, YOUR HONOR.

24           MR. STAMBAUGH:  NO, YOUR HONOR.

25           THE COURT:  MR. SUERO, YOU ARE A YOUNG MAN.

1   YOU APPEAR TO ME TO HAVE A LOT OF POTENTIAL.  YOU ALSO

2   APPEAR TO HAVE SOME ANGER AND SOME AUTHORITY ISSUES THAT

3   YOU NEED TO ADDRESS.  YOU HAVE THESE TWO CHILDREN TO BE

4   CONCERNED ABOUT.  I HOPE YOU TAKE ADVANTAGE OF EVERY

5   MINUTE OF THIS TIME.  I DON'T KNOW WHAT KIND OF CHARGES

6   YOU HAVE TO FACE IN VERMONT OR WHETHER IT'S ALL RELATED TO

7   THIS HERE OR HOW THAT ALL WILL TURN OUT UP THERE, BUT I

8   HOPE YOU GET ALL THIS STUFF BEHIND YOU AND GET ON WITH

9   YOUR LIFE.  YOU'VE GOT A LOT OF LIFE IN FRONT OF YOU.  I

10   HOPE YOU PUT YOUR TALENTS TO GOOD USE.

11         THE DEFENDANT:  THANK YOU.

12         THE COURT:  GOOD LUCK TO YOU.

13         THE DEFENDANT:  THANK YOU.

14         THE COURT:  ALL RIGHT.  YOU'LL BE REMANDED TO

15   THE CUSTODY OF THE MARSHAL TO SERVE THAT SENTENCE.

16         MR. STAMBAUGH:  THANK YOU, YOUR HONOR.

17         THE COURT:  ALL RIGHT.  THANK YOU ALL VERY

18   MUCH.

19         LET'S ADJOURN FOR THE DAY.

20     (PROCEEDINGS ARE CONCLUDED AT 3:42 P.M.)

21   I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

22   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

23

24

  KAREN J. BRADLEY/S               3/24/16

25   SIGNATURE OF COURT REPORTER        DATE